### 13474

#### MOSELEY v. AMERICAN NATIONAL INS. CO.

(166 S. E., 94)

*Messrs. W. C. Wolfe* and *A. J. Hydrick,* for appellant,.

*Messrs. Lide & Felder* and *C. E. Summers,* for respondent,

September 6, 1932.

The opinion of the Court was delivered by MR. W. C. COTHRAN, ACTING ASSOCIATE JUSTICE.

In the early part of the year 1929, John P. Moseley, then junior, removed from Orangeburg, S. C., to Bay Town, Tex. This town was very near to the town of Goose Creek, Tex., and the duties of young Moseley required him to make frequent visits to Goose Creek. In this way he became acquainted with H. O. Hart, the agent for the defendant insurance company, the respondent herein. Quite a friendly association soon existed between the two men; frequently conversations were had; Hart patronized the dry cleaning business of young Moseley; and in due time Moseley permitted Hart to write for him a policy of life insurance. Hart then requested Moseley to permit him (Hart) to write a policy on the life of Moseley's father. Moseley knew that his father was not in good health, but furnished to Hart certain information relative to Moseley, Sr., such as his age, occupation, etc. Moseley then gave to Hart a check for $10.00, and received from Hart a receipt for the amount. This receipt was a regular printed form of the company, and stated that the $10.00 was received as a deposit, pending the consideration of an application for insurance "upon the life of your father." It was a refunding receipt, in so far as the printed portion thereof is concerned; the provisions being that the payment of $10.00 would be credited as a payment on the policy if and when an application for insurance was filled out by the insured, acceptable to both the company and the insured. The receipt was dated May 14, 1929, and the check for $10.00 was dated the same day.

In addition to the printed portion of the receipt, there appeared upon the face of the receipt the words "effective immediately" written with pen and ink. Moseley testified that these words were written by Hart, who also signed the re-

ceipt, although to at least one member of this Court there seems to be very little similarity in the handwriting of "effective immediately" and "H. O. Hart."

John P. Moseley, the "your father" mentioned in the receipt, was then "not a well man," and died in July, 1929. A day or two after his death there was received by his widow, addressed to him, a letter inclosing an application for $2,-000.00 of insurance. The application was dated June 21, 1929. The application had a few of the blank spaces filled out, such as the amount, the business of Moseley, and that J. P. Moseley, Jr., was the beneficiary. The letter requested Mr. Moseley to call on Dr. G. C. Bolin for the medical examination. Nothing was done as to this application; Moseley being then dead.

Shortly after the death of the elder Moseley, the younger Moseley returned to Orangeburg from New York, whence he had gone upon leaving Texas shortly after the transaction herein mentioned. He had the receipt which Hart had given him and, obtaining the unsigned application blank, he brought suit against the insurance company for the sum of $2,000.00 and interest, claiming to be the beneficiary under a policy which was never issued, but which was "effective immediately" on May 14, 1929.

The testimony produced the facts above stated together with the defense that no policy had ever been issued; no contract for a policy had even been entered into between the defendant and the deceased; and that the defendant was not liable for any amount to the plaintiff. Upon the conclusion of the testimony, the defendant made a motion for a directed verdict in its favor, which was granted. The grounds upon which the motion was made were that the plaintiff had not proven a contract for life insurance upon the life of John P. Moseley; no contract ever existed, and all the plaintiff made out was the receipt providing that the defendant would consider an application for insurance. From the judgment entered upon the directed verdict, this

appeal is taken. Numerous exceptions allege error on the part of the trial Judge in granting the motion and in the exclusion of testimony. From the view we take of the appeal, all exceptions are disposed of in this opinion.

The trial Judge assigned no reason for his ruling, merely saying, after hearing the grounds submitted: "I have made up my mind." If, however, his conclusion be correct, his reason is immaterial.

The pivotal question in this case is whether or not the plaintiff has a cause of action. If he should have, there was evidence sufficient to go to the jury, and the direction of the verdict was error. If not, then the admission or exclusion of evidence, although erroneous as matter of law, was harmless.

That the deceased had no policy or contract of insurance with the defendant is admitted. It is likewise true that he was never consulted in regard thereto, and, in so far as the record before us is concerned, he knew nothing of any efforts to procure insurance on his life.

In Joyce on Insurance (2d Ed.), § 892, it is said: "A person can have no insurable interest where his only right arises under a contract which he had no authority to make."

Under the law of this State, a child has an insurable interest in the life of the parent, but in the present case the claim of the son is not based upon the general provisions of the law, but upon a receipt, called a contract. If a receipt, it was at all times subject to explanation, and, if a contract, it was one the son had no authority to make as binding upon the insurance company and his father. That the son was not acting as the agent of his father is perfectly apparent from the admitted fact that the father knew nothing of the transaction. An insurable interest is in the nature of an inchoate right, everpresent for perfection in those who possess the right, but never perfected until all legal requirements have been performed.

This appeal presents a typical case of an effort to obtain insurance upon the life of another without the knowledge or consent of the insured. Quoting again from Joyce, § 2509 D: "It has been broadly stated that insurance taken out on the life of another, without the latter's consent, is against public policy and void."

This doctrine is sustained by the citation of authorities from other states. A Kentucky case, *Metropolitan Life Insurance Company v. Monohan,* 102 Ky., 13, 42 S. W., 924, appears to be in point. This case holds that it is against public policy to procure insurance on the life of another without his knowledge or consent, even though the insurance was procured by one having an insurable interest in the life of the insured.

The basis for holding such contracts of insurance to be against public policy is grounded upon the law prohibiting wagering contracts. This is treated in our own case of *Crosswell v. Conn. Indemnity Association,* 51 S. C., 103, 28 S. E., 200, 201. Quoting further from the *Crosswell case* we find the following: "There seems to be a clear distinction between cases in which the policy is procured by the insured *bona fide* of his own motion and cases in which it is procured by another. It is a very different thing to allow a man to create voluntarily an interest in his termination and to allow some one else to do so at their will."

The plaintiff relies strongly on the case of *Stanton v. Equitable Life Assur. Society,* 137 S. C., 396, 135 S. E., 367. The only point of similarity in the two cases is that no policy was ever issued in either. If there were no distinguishing features in the cases, and we did not care to follow the *Stanton case,* it could be said that the *Stanton case* was decided by a divided Court, two Justices were for affirmance, two for reversal, and the fifth Justice concurred only in the result of the main opinion. Under these conditions it has been held that such cases shall not be considered as precedents, but establish the law only as to the particular case.

But the cases are entirely different in many particulars, and can be easily distinguished. Without attempting to state all of the distinguishing features, we may say that Stanton applied for his own insurance; paid his premium; took a refunding receipt; filled out his own application; submitted to the medical examination; and awaited the issue of his policy. Moseley, on the contrary, did none of these things for the very simple reason that he was never apprised of what was taking place. The *Stanton case* may or may not be followed in the future and as to this we are not now called upon to decide. We do say, however, that, insofar as the present appeal is concerned, the *Stanton case* is not authority for the reversal of the judgment below.

The principle of law herein stated that insurance taken out on the life of another, without the latter's consent, is against public policy is, of course, subject to at least two well-recognized exceptions. These exceptions are not apparent in the present case, but are herein referred to for future guidance. Perfectly valid policies of insurance may be taken out by those having an insurable interest upon the lives of minors; in such cases the consent of the minor not being necessary and not binding, even though obtained. Another instance where the prior consent of the insured is not necessary is where the insured by acquiescence in the policy or by conduct causing the policy to be issued thereby waives the necessity for prior consent.

We do not see where Moseley, Sr., had any contract whatsoever with the defendant insurance company, and hence, there could be no beneficiary. There being no beneficiary, Moseley, Jr., basing his claim thereupon, has no cause of action.

The judgment of this Court is that the judgment of the county Court be affirmed.

Mr. Chief Justice Blease and Messrs. Justices Stabler, Carter and Bonham concur.