14439

HYDER v. METROPOLITAN LIFE INSURANCE CO.

(190 S. E., 239)

March, 1936.

*Messrs. Hall, Vassy & Hall,* for appellant,

*Messrs. Dobson & Dobson* for respondent,

February 24, 1937.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiff is the father of James Alfred Hyder, an infant who was nine years, six months, and nine days old

when he died, January 11, 1935. The 29th day of December, 1934, the plaintiff signed an application to obtain a policy of insurance on the life of his said son in the sum of $1,000.00, of which he was the named beneficiary. When the application was signed, plaintiff paid the agent of the insurance company the sum of $1.86, and the agent gave him a receipt in writing, of which the following is a copy:

"Received from Benjamin Hyder, for James Alfred Hyder (the applicant), One and 86/100 Dollars, on account of application made this date to Metropolitan Life Insurance Company. If this sum is equal to the first full premium on the policy applied for and if such application is approved at the Company's Home Office for the Class, Plan, and Amount of insurance therein applied for, then the insurance applied for shall be in force from this date, but otherwise no insurance shall be in force under said application unless and until a policy has been issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the Company during the lifetime of the Applicant. The above sum shall be refunded if the application is declined or if a policy is issued other than as applied for and not accepted by the Applicant.

"If policy is not delivered to you within 60 days from date, this receipt should be presented at the District Office, or the Home Office in New York for refund."

James Alfred Hyder died the 11th day of January, 1935. No medical examination of the lad had been made, nor had the application been sent to the home office. It had been sent to the office of the district agent in Spartanburg and by him approved, and the risk recommended December 29, 1934. It was returned to the local agent, O. R. Parris, at Gaffney, two or three days before the death of the lad. It was on the desk of the examining physician of the company when the boy died.

Proofs of death were forwarded to the company, which denied liability. Thereupon action was brought.

Omitting the formal allegations of the complaint, Paragraph IV thereof is here reproduced: "IV. That the said Metropolitan Life Insurance Company through its Agent, O. R. Parris, when the application above described was taken, advised the plaintiff that the monthly premium on the Insurance applied for was the sum of $1.86 each month, and that if this amount were paid at that time, the said James Alfred Hyder would be insured from that date, under the said contract of Insurance; and plaintiff, relying upon this assurance, paid to the said O. R. Parris, as Agent for the Metropolitan Life Insurance Company, the sum of $1.86, the said Agent at the time of receiving the money representing to plaintiff that the Insurance was in full force and effect from that day on."

The answer admits Paragraph 1 of the complaint, and so much of Paragraphs 2 and 3 as relates to the preliminaries and negotiations leading up to the taking of the application. Further answering, it denies that O. R. Parris, agent, represented to plaintiff that the policy applied for would be effective from the date of the application, and alleges that Parris had no power or authority to make such representation, and has no power or authority in any way to bind the company by contract or otherwise, by any representation or agreement not contained in the application or written agreement signed by the officers of the company, and this company has not since ratified any such representation or agreement.

The defendant further answers that, when the premium referred to in the complaint was paid to Parris, agent, a receipt therefor was given plaintiff which specified that no insurance should be of force under said application until and unless a policy has been issued and delivered, and the full first premium has been paid to and accepted by the company during the lifetime of the applicant.

The answer further alleges that James Alfred Hyder was required to stand a medical examination before the policy

applied for would be issued; that no medical examination was had and no policy issued and delivered to plaintiff, or any other person during the lifetime of James Alfred Hyder.

The answer further alleges on information and belief that plaintiff, who signed the application herein, had had several years of experience in writing life insurance; that the application signed by him provided that no agent, medical examiner, nor any other person except the officers of the company, have power on behalf of the company to make, modify, or discharge any contract of insurance, or to bind the company by making any promises respecting any benefits under any policy issued thereunder; that the application herein contained the further stipulation that no statement made to or by, and no knowledge on the part of any agent, or medical examiner or any other person as to any fact pertaining to the applicant, shall be considered as having been made to or brought to the knowledge of the company, unless stated in either part A or part B of the application. And no such statements as are alleged to have been made by O. R. Parris are contained in part A or part B of the application.

The answer further alleges that the application signed by the plaintiff contained the express stipulation that the policy applied for was to replace Metropolitan Policy No. 119602314, an industrial policy then in force on the life of James Alfred Hyder, and payable to plaintiff herein as beneficiary. This policy provided for the payment of $648.00, which sum has been paid to plaintiff and accepted by him in full discharge of the industrial policy.

The case came on for trial before Judge Johnson and a jury at the spring, 1935, term of the Court of Common Pleas for Cherokee County, and verdict was rendered for plaintiff in the sum of $1,000.00 and interest.

At proper times motions for nonsuit and directed verdict were made by defendant, and overruled. During the progress of the trial, the plaintiff attempted to prove by oral testimony

the statement alleged in the complaint to have been made to plaintiff by the agent, Parris, to wit, that, if the monthly premium of $1.86 was paid at that time, the insurance was in full force and effect from that date; that plaintiff, relying on that statement, paid to the agent then and there the sum of $1.86, which was accepted by the agent. Counsel for the defendant objected to this testimony, which objection was sustained. His Honor said: "Both the application and the receipt in this case show that it was within the contemplation of the parties and was agreed by the applicant, the plaintiff in this case, that the application should be forwarded to the Home Office for acceptance and therefore an oral statement made by the agent at the time the application was taken to the effect that the policy took effect right then, regardless of the forwarding and receipt of the application by the Home Office, would be varying the terms of the written instruments."

Defendant objected to all the testimony relating to the health, insurability, and acceptability of James Alfred Hyder as an insurance risk on the ground that it was irrelevant, incompetent, and immaterial and had no bearing on the issues raised by the pleadings. The objection was overruled.

At the conclusion of plaintiff's testimony, defendant moved to strike out this testimony on the grounds stated in the objection, and on the further grounds that it is an effort to prove or show a waiver of the conditions contained in the receipt and application; that these conditions appear on their face to be conditions precedent and such waiver was not pleaded. The motion was overruled. Thereupon defendant moved for nonsuit on the following grounds: "The defendant moves for a nonsuit upon the ground that the only cause of action set out in the complaint is an alleged contract made between the plaintiff and the defendant by its agent, O. R. Parris; and upon the further ground that the complaint does not allege any waiver of the conditions contained in the receipt and application that have been introduced in evidence,

and that the parol testimony having been excluded, there is nothing left in the complaint upon which the cause of action can be sustained; and upon the further ground that there is no competent, relevant testimony as developed by the plaintiff's case to go to the jury that would sustain the plaintiff's cause of action; and upon the further ground that the insurability and acceptability of James Alfred Hyder, as an applicant for insurance, are to be determined, as shown by the receipt and the application introduced in evidence by the Company, the defendant, and by such reasonable methods as it adopted for determining the insurability and acceptability of an applicant and not by testimony."

The motion was overruled.

At the proper time defendant moved for a directed verdict on the following grounds:

"The defendant moves for a directed verdict in favor of plaintiff for $1.86, upon the grounds stated in the motion for nonsuit, being that there is no competent testimony to be submitted to the jury to sustain the plaintiff's cause of action; upon the ground that the agent, Parris, had no authority to waive any of the conditions set out in the receipt and in the application, and that the receipt and application notified plaintiff that he had no authority to waive any of these conditions. On the further ground that waiver of any of the conditions are not pleaded in plaintiff's complaint and that the conditions contained in the receipt and application are conditions precedent to the issuance of a policy and obligation on the part of the defendant.

"Upon the further ground that the application for the insurance policy had not been forwarded to the Insurance Company; that the applicant had not had a medical examination; that the defendant had had no opportunity to pass upon his acceptability as an insurance risk or his insurability; had had no opportunity to say whether it would issue a policy upon James Alfred Hyder upon that plan, or upon what plan of insurance it would issue a policy, and that the right of

determining the insurability of James A. Hyder and his acceptability as an insurance risk are such reasonable methods as the Company may adopt, and that the method of establishing that insurability and acceptability is not by testimony as to the condition of the health of James A. Hyder."

The motion was overruled.

Defendant appeals on grounds stated in 14 exceptions. These are treated by appellant's counsel in groups, thus, 1 and 2 separately, 3, 4 and 5 together, 6, 7, and 8 together, 9 and 10 together, 11, 12, 13, and 14 together. We shall not discuss each of them especially, but all of them shall have consideration in the frame of this opinion.

It appears to us that the primary issue to be determined is whether the presiding Judge erred in refusing the motion for nonsuit.

The cause of action set out in the complaint is contained in Paragraph IV. Analyzed, it amounts to this: That the company, by its agent, Parris, advised the plaintiff that, if he then paid the full premium for the first month, "the insurance was in full force and effect from that day on"; that the plaintiff, *relying upon this assurance,* paid to Parris, as the agent of the company, the sum of $1.86, the full amount of one month's premium. No other contract is pleaded. When plaintiff offered to prove by parol the statement alleged by the complaint to have been made by the agent, Parris, defendant's counsel objected. Defendant had pleaded and set out the written application for insurance, duly signed by plaintiff, which contained the following provision: "That the Company shall incur no liability under this application until it has been received, approved and a policy issued and delivered and the full first premium stipulated in the policy has been actually paid to and accepted by the Company during the lifetime of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue on the first page thereof."

The receipt in writing given to plaintiff was in evidence, but it was not pleaded as the foundation of plaintiff's cause of action. It contained this provision: "If this sum is equal to the full first premium on the policy applied for and if such application is approved at the Company's Home Office for the Class, Plan and amount of insurance therein applied for, then the insurance applied for shall be in force from this date, but otherwise no insurance shall be in force under said application unless and until a policy has been issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the Company during the lifetime of the applicant."

The objection made by defendant's counsel to the parol testimony was sustained by the trial Judge on the ground that it would vary the terms of the written instruments.

Having thus ruled out this testimony, what was left in the complaint? It may be admitted that an action will lie on a "binding receipt" under proper circumstances in accord with the terms of the receipt. But plaintiff has not declared on the written receipt in this case. He has definitely and specifically declared on an alleged parol agreement with the agent of the company. This, the trial Court held to be no contract or agreement. The plaintiff has had experience as a soliciting agent and in writing applications for insurance, and must be held to have known and understood the terms and conditions of the application which he signed. It can reasonably be argued that he realized that the circumstances of this case made it impossible to maintain an action on the written binding receipt, and sought to evade this horn of his dilemma by declaring on the alleged oral agreement with the agent, Parris. Be that as it may, it is a fact that the only contract alleged as the foundation of this action is such alleged oral agreement. This, the Court has held to be no contract. It is sought to sustain the action on the ground that the company waived the strict enforcement of the terms and conditions of the application and of the written receipt. We find no such

relevant or competent evidence of waiver in the record. The conditions laid down in the two written instruments are conditions precedent, and, in order to avail himself of the doctrine of waiver, the plea of waiver should have been made.

There can be no question of the correctness of the trial Judge's ruling that the parol testimony offered was incompetent. The plaintiff knew the limitations of the company's agent. He is an insurance man of experience himself; a man of superior intelligence. He is held by law to know the contents of the application in writing which he had signed.

"While restrictions or limitations of which insured has no notice are not binding on him, he cannot hold the company bound by the acts, contracts, or representations of an agent, whether general or special, which are beyond the scope of such agent's authority as are known either actually or circumstantially to him." 32 C. J., 1064, § 141.

"Where a person deals with an insurance agent, is by circumstances put on notice that he is a special agent, or his powers are otherwise limited, such person is bound at his peril to take notice of and ascertain the limitations imposed." *Id.,* 1065.

"When the parties have reduced their contract to writing, the court can look only to the terms in which the parties have expressed their intention in such writing." *Blackwell v. Faucett,* 117 S. C., 60, 108 S. E., 295.

"The next question we notice is whether the court erred in allowing witnesses to testify as to declarations made by J. P. Smith, at the time he received the application for membership and insurance and receipted for the premium, that the property was insured from the time receipt was given. No written contract or policy of insurance was issued or delivered in this case, and the plaintiff sought to recover upon a contract based upon the receipt of the application, the premium, the declaration of the Agent, Smith, and other

circumstances from which acceptance was sought to be inferred. We do not think this evidence was competent. The written application signed by plaintiff expressly provided: 'There is no contract of insurance until the application is accepted by the home office in Spartanburg, subject to the charter, by-laws and rules governing the company.' * * * There was no evidence that Smith, though authorized to solicit applications and forward to the office in Spartanburg and to receive and forward premiums, had any authority whatever to make or deliver contracts of insurance, and therefore his declarations could not be admissible to show a contract he had no power to make. Furthermore, the plaintiff must be held to have known Smith had no such authority, as the declarations were in conflict with the express stipulation in the application requiring acceptance at the home office as esesntial to such contract." *McGrath v. Piedmont Mutual Ins. Co.,* 74 S. C., 69, 64 S. E., 218, 219.

The facts of this case are in such striking parallel with those of the case at bar as to render any further citation of any other authorities unnecessary.

The trial Judge having correctly held that parol testimony was incompetent to prove the alleged oral contract sued on, nothing was left in the complaint upon which to base a claim for an insurance contract. The motion for nonsuit should have been granted.

We may here dispose of the question of waiver. Frankly, we find in the record no relevant, competent testimony to show that the defendant ever waived any of the stipulations or conditions of the written application. We think respondent is precluded from offering evidence of waiver by reason of the fact that these stipulations and terms are conditions precedent, and, if plaintiff intended to rely on waiver, it was incumbent on him to plead it. This he had not done.

In the old case of *Salmon v. Jenkins,* 4 McCord, star page 288, it was said by Judge Nott for the Court of Appeals: "The defendant undertook to build a house for plaintiff, and

on failure thereof, to pay him twelve hundred dollars. The breach assigned is, that he has not paid the twelve hundred dollars, without any averment that he has not performed the work. But it may be that the defendant has performed the work, and until the contrary is known, the plaintiff has no cause of action."

In the case of *Kirby v. Gulf Refining Co.*, 173 S. C., 224, 175 S. E., 535, 536, the Court quoted with approval from Bliss on Code Pleading, page 430: "We have already seen it to be a fundamental principle of pleading under the Code that every fact must be affirmatively pleaded by the party who is first required to prove it, and that no new matter can be offered in evidence by a defendant who has simply denied plaintiff's allegations, unless it tends to disprove a fact to be in the first instance affirmatively established by the plaintiff."

It follows analogically that this rule applies to plaintiff. If he intended to stand upon the proposition that the company had, by word or deed, waived a strict compliance with the stipulations of the application and the receipt, he should have pleaded it in his complaint. Instead, he elected to stand upon an alleged oral contract, made with defendant's agent. No testimony was competent which was offered for the purpose of proving such waiver.

"Testimony of witness that insurer's agent had told him that insured had gotten insurance on application and that policy would be in effect from date of application when approved held inadmissible to show waiver of requirement stated in premium receipt that no liability was incurred by insurer until policy was issued and delivered to insured during his lifetime in good health." *McLeod v. Life Ins. Co. of Va.*, 179 S. C., 349, 184 S. E., 116.

In the case of *Griffith v. Newell*, 69 S. C., 300, 48 S. E., 259, this Court said: "The plaintiff's action was based upon the contract, and the complaint contained no allegation that defendants had waived any of its

terms. The contract provided the manner in which its terms might be changed so as to permit the superintendent to furnish less than 20 convicts the second and third year. It is true, this stipulation might be waived by defendants; but it is familiar law that in order for one party to recover of another party upon a mutual, dependent contract, the plaintiff must allege performance of all conditions precedent on his part, or, if he relies upon a waiver of any such stipulations, or excuse for nonperformance on his part, he must allege such waiver or excuse." 4 Ency. Pl. & Pr., 628; 9 Cyc., 719; Section 183, Code Civ. Proc. (Code 1932, § 480).

"A condition precedent, being something essential to the right asserted, must be alleged in the complaint, while a condition subsequent, being something relied on to modify or defeat the action, is matter of defense." *Griffith v. Newell, supra.*

The contentions and issues made by most of the other exceptions arise from the construction given by the trial Judge to the receipt given to plaintiff, and by his application of his construction to the pleadings and the facts of the case.

In his rulings which overrule the motions for nonsuit and for directed verdict, and in his charge to the jury in relation to the receipt and the application, their meaning and their functions, he made statements and charges which seem to us to be untenable, and beside and unrelated to the issues involved, and therefore misleading.

In overruling the motion for nonsuit he said:

"I might say right here for the information of argument, there is no question in the world but what if a person is insured at the time he pays, that he takes the application and pays his premium, there is no doubt in the world but what, in my mind, that if a person who is insurable, in good health, and entitled to life insurance, that he makes application, pays the first premium in advance and takes a binding receipt, if it is worded that way, that his beneficiary in the event of his

death, before that policy is issued, has a cause of action against the Company.

"There isn't any question about that, otherwise there wouldn't be any use in anyone ever doing such a thing as that."

We shall presently show that this is a fundamental misconception and misconstruction of the function and purpose of this binding receipt.

Such statements were especially harmful and without foundation in the present case because they interjected a cause of action upon which plaintiff had not founded his action, and against which defendant had had no opportunity to prepare its defense. This action of the Court made a contract between plaintiff and defendant, which was contrary to his own ruling on the objection to the testimony offered to prove an alleged parol agreement between plaintiff and agent, Parris.

It is difficult to reconcile his ruling with that quoted from the order overruling the motion for nonsuit. Here the Court distinctly recognizes that there was no insurance; that is, the appellant acquired no right of action against the company until the conditions of the application and the receipt had been complied with. In the language quoted from the order he takes the ground that the insurance took effect—an effect which could not be changed—immediately upon the payment of the premium and the issuance of the binding receipt. The views are irreconcilable and must have caused confusion in the minds of the jurors.

In his charge to the jury his Honor said: "Now in this case I charge you that the rights of the parties in this case do not depend upon a policy of insurance actually issued and delivered because one was not issued and delivered, but the rights of the parties depend upon and deal upon the agreements contained in the application and this receipt."

He also charged:

"Now, as I said a moment ago, Gentlemen, that is what is known in law as a binding receipt, and it means this. It doesn't mean just exactly what it appears to mean on its face. It means that if the applicant is in good health on the date the application is given, and if he pays the full first premium on the date the application is given, and it goes to the Home Office and they find him to be an acceptable and insurable risk, and approve his application, then he is insured from the date of that application, then he is insured from the date of that application even though he should die before it actually approved or before he received the policy, if they approved it after his death.   *   *   *

"It means more than that, also. It means that they couldn't, if the insured at the time that the application was given paid the full first premium, and if he were then on that date in good health and an acceptable insurable risk, that the Company could not arbitrarily or without good cause therefor refuse to issue the policy later on, because it is their duty under this binding receipt, if he is an acceptable insurable risk, to issue the policy because they took his money in advance and gave him this kind of receipt.   *   *   *

"So, also, I charge you that an insurance company cannot escape liability under one of these binding receipts if at the time the application is given to the agent the full first premium is paid, and if the applicant is on that date an acceptable insurable risk, that the company can't escape liability by just not ever passing upon the application or taking any action upon it at all, or without actually declining the policy."

We do not think that his Honor has correctly construed this binding receipt. He plainly states that the receipt does not mean what it says. We think it does. He interpolates into it language and conditions which are not in it.

This interpretation of the binding receipt is not in accord with the interpretations given such receipts in this jurisdic-

tion, and the majority of other jurisdictions, including the Federal Courts.

The Court charged the jury that both parties were bound by the terms of the application and the binding receipt. The features of each of these instruments here pertinent are already quoted herein.

We think there is no ambiguity about this receipt. It means just what it says, viz.: If the application is forwarded to the home office and approved for the class, plan, and amount of insurance applied for, the insurance is of force from the date of the receipt; and it follows that, if the applicant dies after that date and before the issuing and delivering of the policy, his insurance will be paid. If no binding receipt is given, then the contract of insurance is not effective until the policy is issued and delivered during the lifetime of the insured.

In the case of *Cantor v. Life Ins. Co.,* 169 S. C., 338, 168 S. E., 848, Cantor was given a binding receipt. His application was sent to the home office, approved, and the policy was then in the mail, or in the hands of the company's agent; before it was delivered, he was injured by an automobile and died. This Court held that the insurance was in force.

In the case of *Gardner, v. North State Mut. Life Ins. Co.,* 163 N. C., 367, 79 S. E., 806, 808, Ann. Cas., 1915-B, 652, 48 L. R. A. (N. S.), 714, this is said at page 716 of the last-named citation: "When properly executed, the 'binding slip' protects the applicant for insurance against the contingency of sickness intervening its date and the delivery of the policy, if the application for insurance is accepted. If the application is not accepted in the proper exercise of the company's right, and the insurance, therefore, is refused, the 'binding slip' ceases *eo instanti* to have any effect. It does not insure of itself, but is merely a provision against any illness supervening it, if there is afterwards an acceptance of the application, upon which it depends for its vitality. This view, which is the prevailing one, if there is anything to the

contrary, is clearly stated by the Chief Justice in *Grier v. Mutual L. Ins. Co.*, 132 N. C., 542, 44 S. E., 28."

In the case of *Pace v. Provident Savings L. A. Soc.*, 113 F., 13, the Circuit Court of Appeals for the Fifth Circuit said: "The receipt for first premium, which is the basis of this suit, does not appear to have been given or issued by a duly-authorized agent of the Provident Life Assurance Society. If considered as issued by a duly-authorized agent, and to be a binding receipt of the company, still it must be construed in connection with the application and the statements therein, and held to effect insurance upon the life of the applicant only in case the application was thereafter accepted by the society. The decree of the circuit court seems to be in accordance with the law and the facts of the case, and it is affirmed."

The Circuit Court of Appeals for the Eighth Circuit in the case of *Mohrstadt v. Mutual L. Ins. Co.*, 115 F., at page 81, 82, has given such an excellent opinion on this subject of binding receipt we venture to quote from it fully. The body of the receipt concerned in that case is as follows:

"Am't premium, $102.50.    Insurance, $5,000.
    "No. 5,260      Dexter,      Dec. 16, 1897.

"Received from Thomas A. Thompson one hundred and two and 50/100 dollars, for the first annual premium on his application for a policy of insurance in the Mutual Life Insurance Company of New York, for five thousand dollars, on the life of Thomas A. Thompson. Said policy of insurance to take effect and be in force from and after the date hereof, provided the said application shall be accepted by the said company; but, should the same be declined or rejected by said company, then the full amount hereby paid will be returned to applicant upon the delivery of this receipt. This receipt will be void when applicant is notified that a policy has not been issued, and shall not be valid for any other consideration than cash actually paid.

                                "Baker Brothers, Gen'l Agents."

The Court said:

"Such difficulty as we have encountered in the case arises over the interpretation of the foregoing receipt, dated December 16, 1897, sometimes termed a 'binding receipt.' If the true construction of that receipt be that Thompson was to be regarded as insured in the sum of $5,000, at an annual premium of $102.50, until such time as the company had considered his application, and announced its determination to accept or reject the risk, then, in our opinion, .the company could not terminate the temporary risk so assumed by the receipt otherwise than by a notice, brought home to the insured in his lifetime, that his proposition was rejected. In that view of the case, the duty of giving such a notice would rest upon the company, and the risk would continue until the duty was discharged. On the other hand, if the true construction of the receipt be that the risk was to commence on December 16, 1897, if the application for insurance on the terms proposed was accepted at the home office, and that in no event was the deceased to be regarded as insured until the application was scrutinized and accepted, then no right of recovery was shown, according to our view of the testimony, because it is clear that the company did reject the application for insurance on the terms proposed, and took the proper steps to advise the deceased of the fact with reasonable diligence. The receipt, as it will be observed, contains the stipulation, 'said policy of insurance to take effect and be in force from and after the date hereof, provided the said application shall be accepted by said company.' The natural interpretation of this clause would seem to be that the word 'provided' was used, as it generally is, in the sense of 'if,' and that the risk was to take effect as of the date specified 'if' the application, on examination and approval at the home office, was accepted, and only in that event. When that was done the company was willing that the risk should commence as of the date of the receipt, although the execution of the policy, embodying all of the terms of the contract,

might be delayed for a considerable period. The opposite construction of the receipt, above suggested, not only runs counter to the usual meaning of the words employed to express the agreement of the parties, but it in fact arms local agents with a power not usually intrusted to them—to saddle the company with large liabilities for temporary insurance before the chief medical officers of the company have had any opportunity to examine and approve such risks. A receipt identical in form with the one now under consideration, and issued by the same company, was before the supreme court of the United States for construction in a case heretofore cited (*Mutual L. Insurance Co. v. Young's Adm'r* [23 Wall.], (90 U. S.), 85, 106, 23 L. Ed., 152); and the Court held as we construe the opinion, that a receipt in such a form is not an absolute assumption of a risk temporarily (that is to say, until such time as the application is accepted or rejected), but that it is a qualified acceptance; the risk taking effect only in the event that the application is accepted, and that the company elects, after examining it, to issue such a policy as is applied for. The language of the Court in that behalf was as follows:

" 'The receipt of the 5th of June was the initial step of the parties. It reserved the absolute right to the company to accept or reject the proposition which it contained. There was a necessary implication that, if it were accepted, the response and acceptance were to be by a policy in conformity with the terms specified in the receipt, as far as they extended, and, beyond that, in the usual form of such instruments as issued by the company. But it was clearly within the power of the company, under the condition expressed, wholly to reject the application, without giving any reason, or to accept the proposition with such modifications of the terms specified, and of the usual conditions of such policies, as it might see fit to prescribe. The entire subject was both affirmatively and negatively within its choice and discretion.

The acceptance was a qualified one, and there was none other'."

The case of *De Cesare v. Metropolitan Life Ins. Co.,* a Massachusetts case reported in 278 Mass., 401, 180 N. E., 154, 155, 81 A. L. R., 327, turns on the construction of a binding receipt almost identical in terms with the one we are considering. The first full premium was paid; the binding receipt said:

"No insurance is in force on such application unless and until a policy has been issued thereon and delivered in accordance with the terms of such application, except that such advance payment is equal to the full first premium on the policy applied for and such application is approved at the Home Office of the Company for the Class, Plan and Amount of insurance and at the rate of Premium as so applied for, then the amount of insurance applied for will be in force from this date, but no obligation is assumed by the Company unless and until such application is so approved."

The application was approved and the policy issued, but before its delivery the applicant died. The Massachusetts Supreme Court held that the conditions of the binding receipt had been complied with; that insurance was of force from the date of the receipt, and gave judgment for the plaintiff.

That decision is in accord with the generally accepted construction of the principle of the function of the binding receipt. In our opinion it is correct.

The Judge who tried this present case was impressed with the idea, and so charged the jury, that when the applicant, the plaintiff in this case, paid the first month's premium, and the agent accepted it and issued to him the binding receipt, the insurance became immediately consummated into a contract, irrespective of the conditions and stipulations of the application and the receipt. For this reason, he admitted the testimony relating to the health of James Alfred Hyder at the date of the receipt and up to his fatal illness, for the pur-

pose of showing that, if he was an insurable risk, the company was bound to pay the amount of the insurance applied for.

We think this was error. He had held and had charged the jury that both parties were bound by the stipulations and conditions of the application and the receipt. Both of them stipulated that there was no insurance, nor any liability on the part of the company unless and until the application had been received at the home office, and was accepted and approved. It is not denied that the application had never been forwarded to the home office, and had nver been accepted and approved.

"To be binding as a contract of insurance, a preliminary contract must be one for present insurance and not merely an agreement to insure at some future time, *as an acceptance of an application, or the issuance and delivery of a policy.* [Italics added.] There must be both an agreement and a consideration for present insurance of a temporary nature." 32 C. J., 1099.

We must not be understood to say that there might not be binding receipts and circumstances to which the rulings and charge now under review might not be applicable. There are various forms of binding receipts issued by the several companies, some of which might by their terms and stipulations sustain actions upon the grounds suggested in the criticized rulings and charge. Our holdings and conclusions are confined specifically to the binding receipt and the application in the present case. There is neither allegation nor proof of any facts which waive the strict enforcement of the contract as made by them.

The respondent asks that the judgment of the lower Court be sustained on three grounds.

As to the first and second of these we may say that it does not appear from the record that respondent excepted to nor appealed from the rulings of the presiding Judge touching the matters therein referred to. The

views hereinabove expressed by us show that the motion cannot be granted. There is no ground of estoppel shown.

To sustain his third ground respondent relies largely upon the first *Cantor case* and the *Stanton case* (*Stanton v. Equitable Life Assur. Soc.*), 137 S. C., 396, 135 S. E., 367.

In the first *Cantor case* (*Cantor v. Reserve Loan Life Ins. Co.*), 161 S. C., 198, 159 S. E., 542, the receipt was in these words:

" 'Received of Abraham Samuels Five Dollars Cash in full for the first annual premium on 1,000 Dollars insurance.'

" 'The insurance shall take effect and be in force according to the terms of the policy for which this settlement is given."

The Court permitted the testimony of one not an agent of the company to the effect that he told the applicant he was protected by paying on it; that it was a binding receipt. The defendant was denied the right to reply to this evidence. This Court hold that was error.

We may add that the application went to the home office, was accepted, and the policy issued and mailed to the agent for delivery. The applicant was injured and died before it was delivered. In the second *Cantor case* this Court held that the company was liable.

Plainly that case is not applicable to this, since the application was never submitted to the home office, nor accepted, nor approved.

The *Stanton case* (*Stanton v. Equitable Life Assur. Soc.*), 137 S. C., 396, 135 S. E., 367, differs radically from this case. Stanton first made application in October, 1917. It was stated that he had at one time "been in the habit of getting on periodical drunks, but had not taken intoxicants for a year before 1917." The company declined to issue the policy, but wrote its agent: "They state, however, that after the lapse of one year they shall be pleased to give the case further consideration." In October, 1918, the home office wrote its agent to open negotiations with Mr. Stanton; this was

done. Mr. Stanton put up his check for the first annual premium and received a binding receipt which contained these stipulations: "Insurance subject to the terms and conditions of the policy contract shall take effect as of the date of this receipt, provided the applicant is on this date, in the opinion of the Society's authorized officers in New York, an insurable risk under its rules, and the application is otherwise acceptable on the plan and for the amount and at the rate of premium applied for."

Note the glaring differences between this receipt and that in our present case.

The second application was refused. Stanton died of "flu" before he heard of the refusal of the application. Action was brought by the widow of Mr. Stanton; the verdict was for the plaintiff. It will be seen from the record that the case turned upon the ground that the company had waived the strict compliance of its terms and conditions, and was estopped to deny a contract was of force between applicant and company.

On appeal the case was decided by a divided Court. Mr. Justice Watts wrote the opinion, Mr. Acting Associate Justice Ramage concurred, Mr. Acting Associate Justice Purdy concurred in the result, principally on the ground of waiver and estoppel; Messrs. Justices Cothran and Marion dissented.

Clearly that case is not authority in this case. Moreover, in the case of *Moseley v. Amer. Nat. Ins. Co.,* 167 S. C., 112, 166 S. E., 94, 96, this Court said of the *Stanton case:* "The *Stanton case* was decided by a divided Court, two Justices were for affirmance, two for reversal, and the fifth Justice concurred only in the result of the main opinion. Under these conditions it has been held that such cases shall not be considered as precedents, but establish the law only as to the particular case."

The judgment cannot be sustained on the grounds suggested by respondent.

The defendant offered to allow judgment against it for $1.86, the amount of the first monthly premium paid by plaintiff, having tendered it to plaintiff before action was brought.

The judgment is reversed, if within ten days after the remittitur goes down defendant pay the plaintiff the said sum of $1.86. If it fail to make such payment within the named time, the plaintiff may enter judgment against defendant for that amount.

Mr. Chief Justice Stabler and Messrs. Justices Baker and Fishburne concur.

Mr. Justice Carter concurs in result.

On rehearing March 11, 1937.

### Order on Petition for Rehearing

*Per curiam.*

Counsel for the respondent have filed a petition for rehearing herein. They predicate their petition on one ground, viz., that which relates to the action of the Court in passing upon the question in reference to the industrial policy on the life of James Alfred Hyder, in the sum of $648.00, the amount of which policy was paid to the respondent after the death of James Alfred Hyder.

The opinion states that the record does not disclose that the appellant had made any exception to the action of the Court relating to this matter, and intimates a doubt whether the Court should consider it.

The petition for rehearing presents matters pertinent to this issue which were not included in the record because appellant made no contention thereabout.

The matter may be arranged without a rehearing by eliminating from the opinion that part to which the petition relates.

Therefore, it is ordered that there be stricken from the opinion filed in this case the 24th of February, 1937, the following:

On page 21, strike out all on that page beginning with the words, "One other question remains to be considered." Strike out all of page 22, and page 23, down to and including the words, "other reasons given herein."

The opinion as thus amended is declared to be the opinion of the Court.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Bonham, Baker and Fishburne concur.