## 18834

Mary B. DIXON and Barney Dixon, Respondents, v. WESTERN
UNION ASSURANCE COMPANY, Appellant

(164 S. E. (2d) 214)

512

*Messrs. Floyd & Craig,* of Hartsville, *for Appellant,*

*Messrs. Saleeby, Saleeby & Herring,* of Hartsville, *for Respondents,*

November 4, 1968.

*Per Curiam.*

This is an appeal from an order of the circuit court granting judgment to plaintiffs in an action on a life insurance policy. After consideration of the record in the light of the exceptions and the arguments of counsel, we agree with the result of the order of the circuit court, Honorable J. A. SPRUILL, JR., Judge. Let the order be reported.

The Order of Judge Spruill

This case has been submitted on the pleadings, the exhibits and an agreed statement of facts. The plaintiffs are represented by Mr. James M. Herring and the defendant by Mr. E. M. Floyd, Jr.

The plaintiffs have brought suit to recover on a policy of life insurance for the death of their minor, emancipated son, who was killed in action in Vietnam on February 14, 1966. It is stipulated that the death of the insured occurred at 12:00 Noon Vietnam time or 1:00 A. M. Eastern Standard Time. This case turns on the effective to be given to a of written instruments.

At a time when their son was in service in Vietnam, the plaintiffs were solicited by the defendant to purchase a policy of insurance on his life and a proposed policy was included with the letter. This solicitation was received by the plaintiffs between February 3 and February 14, 1966. The letter addressed to the plaintiffs was on the letterhead of the defendant and over the signature of its President. This letter is as follows:

"Your son, in the service of our country, is eligible for the enclosed $10,000.00 Life Insurance Policy, even though he may have other insurance policies in force. Perhaps he has elected to participate in the Government's blanket $10,-000.00 Life Insurance program for servicemen, this is a sound plan and we would recommend it without reservation. We would point out, however, that the Government Insurance Program is completely voluntary—the serviceman decides what amount of insurance to carry and specifies the beneficiary—he may drop the policy at any time. The government plan expires 120 days after your boy is discharged. During those 120 days the Government program does assure him an opportunity to replace the Group Policy with a private insurance policy, however, the rates he will pay are unknown.

"Because you are the parent, guardian, or wife of the serviceman named as Insured on the enclosed $10,000.00 Life Insurance policy you are eligible to purchase this coverage and become the beneficiary. This assures you protection for your serviceman at a favorable rate.

"This 'Full Coverage' Policy has a number of advantages which should be of interest to you:

"This is *Permanent Insurance* that does not expire when the insured leaves the service, and it is *Guaranteed Renewable* as long as premiums are paid when due. As the owner and beneficiary you control the policy and its payments. You are always certain that the policy is in effect. Later it can be a gift to your serviceman on some memorable occasion, such as his discharge from the service, graduation, or marriage. You may never give him a finer gift.

"Premiums for this policy have not increased because of war. It provides $10,000.00 Protection on your boy's life during the first years for only $6.80 per month . . . a rate *Less Than Half* of what we charge for ordinary life insurance coverage at this age. After the fifth year, your policy automatically becomes $5,000.00 of ordinary life insurance (building *Cash Values* against which you may borrow at a guaranteed interest rate of 5% or which you can use for paid-up insurance, retirement benefits, or to pay future premiums) for the same $6.80 per month. If you prefer, you may then continue $10,000.00 of ordinary life coverage for $13.60 per month.

"This is not a limited policy! It is in force 24 hours a day regardless of branch of service or duty assignment.

"There is No *War Clause.* If your boy is, now, to the best of your knowledge in good health, he will be permanently insured in war and peace—in service or out—during travel and regardless of where he lives. Unusually hazardous duty is covered—*Even Actual Combat.* In fact everything is covered except sucide occurring the first two years.

"Please put this policy into effect within 30 days of the dispatch date noted on the policy. Complete the questionnaire on the *Ownership Certificate* which already contains the policy number, check the preferred method of payment and enclose the certificate with your first premium payment in the self-addressed envelope, which requires no postage. The policy will then be in force as of the date your envelope containing your premium is postmarked.

"Express your regard for your man in the service by attending to his vital insurance need *now*. Every family can afford this low cost insurance plan and every man in the Armed Forces needs this important protection."

While the letter contained the unqualified statement that the policy would be in effect as of the date the envelope containing the premiums was postmarked, the policy had the following provision:

"This policy shall take effect on the date application for the policy is mailed; provided, that unless such premium is received at the home office of the company while the insured is alive and in sound health, the liability of the company hereunder shall be limited to the return of any premiums paid hereon."

One other pertinent provision of the policy is as follows:

"4. Contract—This Instrument (referred to herein as the policy) and the In Force Certificate shall constitute the entire contract of insurance between the parties hereto. All statements made by or on behalf of the insured shall, in the absence of fraud, be deemed representations not warranties.

"No waiver or change of any of the provisions, definitions or limits of the contract of insurance shall be valid unless approved in writing by the President, Vice-President, Secretary, or Assistant Secretary of the company, and endorsed hereon. The company shall not be bound by any promise or representation heretofore or hereafter made by or to any agent or person other than the persons above enumerated."

Attached to the policy was a so-called "Ownership Certificate." This certificate was to be returned to the defendant with the remittance of the first premium and was, in effect, an application for insurance. This Ownership Certificate contained two statements which are as follows:

"Upon the first premium being mailed Western Union Assurance Company recognizes you as the owner and beneficiary of this policy with the full right to exercise all policy rights and benefits without the consent of the insured.

To the best of your knowledge the insured serviceman is in good health."

\* \* \* \*

"Please put this policy into effect within 30 days of dispatch date noted on policy. Just complete the questionnaire on this ownership certificate, which already contains the policy number, check the preferred method of payment, and enclose the certificate with your first premium payment in the self-addressed envelope, which requires no postage. The policy will then be in force as of the date your premium is postmarked."

It is stipulated that this Ownership Certificate was completed by the plaintiffs and mailed with a money order for the first premium on February 14, 1966. The envelop containing the certificate and the money order was postmarked "Hartsville, S C., February 14 . . . P. M., 1966."

It is stipulated that the plaintiffs did not know that their son had been killed at the time when they mailed the certificate and the premium and that he was, to the best of their knowledge, alive and in good health. It was not until the following day that they were notified that he had been killed in action.

After receipt of the certificate and premium, the defendant, by letter dated February 17, 1966, transmitted to the plaintiffs an In Force Certificate to be attached to the policy which had been enclosed with the original solicitation. This showed the date of issue to be February 14, 1966, and contained the following statement:

"This certificate confirms the In Force Date of your policy, which is the postmarked date of the original application. This certificate is to be attached to and made part of your policy."

After learning of the death of their son, the plaintiffs filed Proof of Loss. When, thereafter, the defendants learned the date of the death of the insured, they disclaimed liability and

tendered back the premium. This action to recover the $10,-000.00 face amount of the policy followed.

The plaintiffs' Complaint is apparently predicated on three alternative theories by which they seek to eliminate the proviso that the liability of the defendant shall be only for return of the premium unless the application and first premium are received in the home office while the insured is alive and in sound health. The first cause of action of the plaintiffs seeks to eliminate the proviso on the theory that the letter of solicitation over the signature of the President is to be considered a part of the policy and that this letter, being inconsistent with the proviso, should be given effect and the proviso should be deleted by reformation of the policy. The second cause of action is predicated on the theory that the President's letter, if not to be regarded as a part of the policy, should be given effect as a representation made pursuant to paragraph four of the policy set out above. Based on the letter and paragraph four, the plaintiffs take the position that the inconsistent proviso should be eliminated. The third cause of action of the plaintiffs is predicated on the theory that the In Force Certificate quoted above is to be considered a part of the contract and that the proviso being inconsistent with it is to be eliminated. In the fourth cause of action the plaintiffs seek to recover on the contract so reformed or construed as to eliminate the proviso.

The Answer of the defendant contains a number of defenses. The first defense is a general denial which defense went out when the case was submitted on an agreed statement of facts.

The second defense raises a question as to jurisdiction but this defense has been eliminated by stipulation of the parties.

The third defense is to the effect that the policy was not effective because of the condition precedent that the insured be alive at the time of the issuance of the policy. This defense sets out that the policy could not have been put into

effect earlier than the afternoon of February 14 and that the insured had died at 1 :00 A. M. that morning.

The fourth defense is predicated on the proviso of the policy that the application and premium be received at the home office while the insured is alive and in sound health, and it recites his death prior to such receipt.

The fifth defense reincorporates the fourth and further pleads that because of it the defendant has disclaimed liability and tendered a refund of premium.

The sixth defense is to the effect that the policy was issued without knowledge or consent of the insured and that it is consequently void and unenforceable.

The seventh defense seeks cancellation of the policy on the grounds of mutual mistake in that both parties thought that the insured was alive whereas he was in fact dead.

The writer shall consider the sixth defense first because, if the defendant is entitled to prevail upon it, there is no need to consider the other defenses. The defense in question is that the policy is void as a matter of public policy as the insured had no knowledge of it and did not consent to its issuance.

There is no question that parents have an insurable interest in their child. The question here for determination is whether the policy issued without the knowledge and consent of the child is void for reasons of public policy. In considering this there would appear to be no distinction between a minor emancipated child and an adult child.

The defendant relied on *Moseley v. American National Insurance Company,* 167 S. C. 112, 166 S. E. 94, and *Ramey v. Carolina Life Insurance Company,* 244 S. C. 16, 135 S. E. (2d) 362, 9 A. L. R. (3d) 1164. The writer is, however, of the opinion that these cases are readily distinguishable.

*Moseley* involved a case where an adult son had attempted to insure the life of his father without the knowledge or con-

sent of the insured. *Ramey* was a tort action against an insurance company for issuing to a wife a policy of insurance on the life of her husband without his knowledge or consent. In *Ramey* the wife had thereafter administered arsenic to her husband in attempt to collect on the policy and had thereby permanently crippled him.

*Ramey* illustrates the reason for the rule enunciated in *Moseley* which is the issuance of a life insurance policy on a person without his knowledge or consent might well be a fruitful source of crime. *Moseley* however, recognizes certain exceptions to the rule as in the case of insurance procured by parents on the life of their unemancipated minor children.

The writer sees no reason of public policy to avoid this contract on the life of the plaintiffs' son who was in service overseas. Moreover, the defendant is hardly in a position to assert that by its method of solicitation of business and issuance of policies it is putting many young men in danger of their lives at the hands of their parents. The writer sees no such danger as in *Moseley* or *Ramey*. Lacking such danger, the defense founded on public policy fails.

Defenses four and five deal with the proviso limiting the liability of the company to return of premium unless the application and premium are received at the home office while the insured is alive and in sound health. There is no question but that the insured had lost his life before receipt of the application and premium so the proviso is a defense if the defendant is in a position to assert it.

The writer does not feel it necessary to determine whether the proviso is to be eliminated on the first, second, or third theories advanced by the plaintiffs. He is, however, strongly of the opinion that in view of the unequivocal language of the letter of solicitation, the Ownership Certificate, and the In Force Certificate, the company is not in position to assert it. The law of waiver and estop-

pel should be sufficient to sustain this position. Moreover the In Force Certificate is, by the terms of the policy, to be considered a part of the contract of insurance. Where there is a difference between the language of the one and the other, clearly the beneficiaries under the policy are entitled to the benefit of that language which is most favorable to them. For the foregoing reasons, the writer is of the opinion that the contract of insurance in this case became effective as of the date of the mailing of the Certificate of Ownership and first premium. It is to be noted that it is not the time of postmark which is controlling but the date of the postmark. This being so, it would clearly follow that the policy, by its terms, is to be considered as effective from the beginning of February 14, 1966.

The third defense is to the effect that it was a condition precedent to the effectiveness of the insurance that the insured be alive at the time of the issuance of the policy. The defendant defends on the ground that the plaintiffs mailed the Ownership Certificate and the first premium on the afternoon of February 14, 1966, where as their son, the insured, had been killed at 1 :00 A. M. Eastern Standard Time on that date.

It is to be noted that this alleged condition precedent on which the defense stands is not set out in any of the written instruments. It is, in effect, a plea that the contract to insure a life is a nullity if the life has in fact already ceased at the time when the contract of the insurance is made. The writer has been unable to find any authority on this point. However, there is helpful analogy in the law of insurance applicable to risks other than on human life.

It is a general rule that the parties to an insurance contract may, by the terms of their contract, make it effective as of the time of the issuance, as of an earlier time, or as of a later time. 12 Appleman 238, 29 Am. Jur., Ins. Secs. 309, 310 and 311. The most familiar example of a policy of insurance being antedated to cover a loss which may have happened before the issuance of the policy is, of

course, in the field of marine insurance. The following is quoted from 29 Am. Jur., Ins. Sec. 327:

"Sec. 327. Retroactive Effect of Policy.—Underwriters of marine insurance may, of course, by a condition in their policies, refuse to assume any loss happening before the date of the policy. However, a time policy covering a period beginning prior to its date may be given a retroactive effect, and a contract insuring goods 'lost or not lost' may be given such an effect, even though the property insured is irrecoverably lost at the time the contract is entered into. This phrase, however, should be regarded as being intended to apply to cases where the property insured has started on its voyage and where the parties to the insurance have no knowledge whether there has been a loss. If such is the intent of the parties—that is, to insure against an unknown event that may or may not have already happened—the risk may attach even though the words 'lost or not lost' are not used."

While he can find no authority for the position, the writer knows of no reason in law or public policy why a policy of life insurance could not be antedated to cover a risk which may already have occurred to a life, where both parties are in ignorance of such loss and are acting in good faith to cover the risk from a time prior to actual issuance of the policy.

From the foregoing, it follows that the defendant is not entitled to cancellation of the policy of insurance on the grounds that both parties were acting under a mistake of fact. It likewise follows that the plaintiffs are entitled to judgment in the amount of Ten Thousand ($10,-000.00) Dollars and it is so ordered.