18859

Gay E. HAMRICK, Conway B. Sutton and Gerald D. Sutton, Appellants, v. LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE, Respondent.

(165 S. E. (2d) 567)

*Messrs. Ward, Howell & Barnes,* of Spartanburg, *for Appellants,*

*Messrs. Carlisle, Bean & Hines,* of Spartanburg, *for Respondent,*

January 16, 1969.

BUSSEY, Justice.

In this action plaintiffs-appellants, as named beneficiaries, sought to recover the sum of $10,000.00 from respondent under an alleged contract of life insurance upon the life of their father, Cecil W. Sutton. Defendant-Respondent denied the existence of any contract of insurance and any liability on its part to plaintiffs. The case was tried before a jury at the February, 1966, term of the County Court of Spartanburg. Motions by the defendant for nonsuit and directed verdict were denied and the jury returned a verdict favorable to the plaintiffs. The trial court thereafter granted defendant's motion for judgment *non obstante veredicto,* and the appeal is from such judgment.

Cecil W. Sutton died accidentally on May 30, 1965. Prior thereto, on May 19, 1965, he was solicited by J. H. Patton, district manager of the defendant at Spartanburg, to purchase a policy of life insurance in the amount or $5,000.00, with a double indemnity provision, the premium to be payable monthly. Such policy was never issued and the liability of the defendant, if any, is dependent upon a receipt then

given by Patton to Sutton which, *inter alia,* contained the following language:

"Received from Cecil W. Sutton the sum of Eighteen and 30/100 Dollars on account of an application made this date to Life and Casualty Insurance Company of Tennessee. If this sum is equal to the full first premium on the policy applied for and if the Company is satisfied that on the latest of the dates stated below in this receipt every person proposed for insurance under the policy was alive and insurable under the Company's rules for the plan and amount of insurance applied for and at the rate of premium declared paid, then the insurance under the policy applied for shall take effect on the latest of the following dates: (i) the date of Part A of the application, (ii) the date of Part B of the application, if a medical examination is required for the proposed insured, * * *."

We have quoted the only pertinent language of the receipt, there being nothing else in either the receipt or the application which would have the effect of altering or varying the quoted language. Cecil W. Sutton was the only person proposed for insurance and if the coverage was effective as to him, it became effective on May 21, 1965, the date shown on Part A of the application.

In the life insurance business there are in use various forms of binding receipts which at least conditionally afford an applicant interim coverage between the date of the application and the actual issuance and delivery of the policy. Such binding receipts have been the source of a great deal of litigation. In determining whether interim coverage is afforded by a particular receipt, the specific language of the receipt must be taken into account. The liability of the insurer, if any, is dependent upon the language of the particular receipt and the facts of the particular case.

The various types of receipts in use in the life insurance business are dealt with and to some extent classified in 29 Am. Jur., commencing at page 598,

Insurance, Sections 208, *et seq.,* and in an annotation in 2 A. L. R. (2d) 945. Principles of law governing the type of receipt with which we are here concerned are set forth in 29 Am. Jur. 600, Insurance, Sec. 210, as follows:

"Sec. 210. As Conditioned Upon Insurability of Applicant.—A more liberal provision than the one which makes the effectiveness of the temporary insurance dependant on the approval of the application by the home office of the insurance company is the provision to the effect that the effectiveness of the temporary insurance shall be conditioned on the insurability of the applicant at the time of the application or the medical examination. Where a binding receipt is issued to the applicant with a provision that the insurance be binding from the date of the application or the medical examination if the insurance company is satisfied that the applicant was an insurable risk at that time, the general rule is that a contract of preliminary insurance is created with the reserved right in the insurer to determine in *good faith* the applicant's insurability." (Emphasis added.)

While we apparently have not heretofore had occasion to deal with a receipt containing precisely the language of the instant receipt, we think the foregoing quotation is in accord with the rationale of prior decisions of this court as will be hereinafter shown. The court below in granting judgment *non obstante veredicto* relied largely on the decision of this court in *Hyder v. Metropolitan Life Ins. Co.,* 183 S. C. 98, 190 S. E. 239. That decision is not, in our view, at all controlling because the facts and the receipt there were totally different from the facts and receipt in the instant case.

Appellants call to our attention that there is a developing trend of respectable authority, from other jurisdictions, for the proposition that a receipt, such as the one with which we are here concerned, affords temporary or interim insurance to an applicant until such time as the application is actually rejected and the applicant notified of such rejection. They urge us to adopt this rule, but we find it unnecessary

to a decision of this cause to consider whether or not such rule be sound.

In *Stanton v. Equitable Life Assur. Soc. of U. S.*, 137 S. C. 396, 135 S. E. 367, a judgment for plaintiffs on a "binding receipt" was sustained. The value of that decision as a precedent has been questioned due to the fact that two justices concurred in the main opinion, one concurred only in its result, and two dissented. *Hyder v. Metropolitan Life Ins. Co., supra: Mosely v. American Nat. Ins. Co.*, 167 S. C. 112, 166 S. E. 94. Nevertheless, well established principles of law in this jurisdiction, which govern the instant controversy, are set forth in the dissenting opinion of Mr. Justice Cothran in the *Stanton* case where he said,

"The receipt upon its face appears to lodge the arbitrary power with the officers of the company to decide whether the applicant was on September 18, 1918, an insurable risk under its rules. But notwithstanding, the case falls under the well-established rule that in ordinary business transactions, not involving matters of personal taste and convenience, neither party has the arbitrary right to decide the existence of a particular fact upon which his obligation under the contract depends. The parties may contract to leave the decision of that issue to one or the other, but the law requires that in that decision the party who is vested with the power of decision shall act fairly, honestly, and reasonably, in view of all the circumstances, and that the other party shall not be bound by that decision when it is shown that the power of decision has been exercised arbitrarily, capriciously, and unreasonably.

" 'It is bad faith and unfair dealing for a person to act unreasonably in an ordinary business transaction when there is nothing in the contract of a personal nature. The action of the insurance company in the case under consideration was not dependent upon taste or upon any fact of a personal nature, but solely upon the existence of a fact in an ordinary business transaction, and it would be bad faith for it to

refuse to be governed by reason and common sense in determining the existence of such fact.' *Thompson v.* [*Security Trust & Life*] *Insurance Co.,* 63 S. C. 290, 41 S. E. 464."

\* \* \* \* \*

"As it is said in the case of *Thompson v.* [*Security Trust & Life*] *Insurance Co.,* 63 S. C. 291, 41 S. E. 464:

" 'The reasonableness of the promisee's action on determining the question is the element entering into the contract, and a disregard of this element is in the nature of a fraud on the rights of the promisor.' "

The legal principles enunciated by Mr. Justice Cothran are fully supported, not only by the Thompson decision, but by the other decisions cited in his dissenting opinion. Justices Cothran and Marion were of the view, however, that the plaintiff there should not be allowed to recover because there was no proof that the insurer acted arbitrarily, capriciously, or unreasonably in refusing to accept the application. In the instant case there was evidence from which it could be inferred that the insurer did act arbitrarily, capriciously and unreasonably in rejecting coverage. The trial judge correctly submitted to the jury, we think, the issue of whether the insurer had or had not acted reasonably.

In considering whether there was error in granting judgment *non obstante veredicto,* it is elementary that all of the evidence and the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiffs. Viewed in such light, the facts disclosed by the record are as follows.

Patton, the district manager of the defendant, had known the applicant Sutton rather well for a period of some thirteen years. Sutton had been previously insured with the defendant and other members of his family were insured by the defendant. Sutton at one time had difficulty with his wife and divorced her and remarried. Some months prior to May, 1965, Sutton became separated from his second wife, insti-

tuted a divorce action against her, returning, however, to live with his first wife prior to his second divorce becoming final. Such domestic history was known to Patton at the time he took the application.

Sutton had previously been engaged in the business of a residential building contractor, but at the time of the application was engaged in operating a combination filling station and grocery store business, where, among other things, hot dogs and beer were sold, his occupational status and history being known to Patton. The recipt, as above mentioned, was given on the 19th day of May and the initial premium in the amount of $18.30 was the correct monthly premium at the manual rate for the policy applied for and for a person of Sutton's age. On May 20, 1965, Sutton was examined by an approved medical examiner of the defendant who found Sutton in good health and completed favorably the medical portion of the application. Part A of the application signed by Sutton and witnessed by Patton was dated May 21. The application introduced in evidence bears several stamps. Part C thereof bears stamps "May 24 received" and "approved examiner", and the last page of the application bears stamp "Received June 1, 1965, Ord. Pol. Dept."

At the time of Sutton's death one of his sons, named as a beneficiary, was constructing a home for an attorney in Spartanburg. In behalf of this son the attorney, on an accommodation basis, contacted Patton and was repeatedly assured by Patton, over a period of approximately two months, that Sutton was insured at the time of his death and the claim would be paid, but that it would take some time since the policy had not been actually issued. On or about July 28, this attorney became apprehensive and wrote the home office of the defendant, and received the following reply from one W. Gordon McKelvey, Jr., Associate Manager of the defendant's claim department.

"Your letter of July 28 has been received.

"Mr. Sutton's application for insurance was disapproved by our Underwriting Department on the basis of all avail-

able facts and circumstances, particularly the occupational exposure that was, involved and a history of domestic difficulties."

Not until after writing the foregoing letter was any effort made by the defendant to tender a refund of the premium paid by Sutton, and following the receipt of Mr. McKelvey's letter this action was instituted.

As far as the record shows, it was not until the trial of the case that the beneficiaries or anyone in their behalf were advised of what developed to be the real contention of the defendant upon the trial. The principal witness for the defendant was a Mr. Smelser of the underwriting department to whom the particular application was referred for evaluation. The record does not disclose precisely when it reached his attention. He at first intimated that he did not know that Sutton was already dead when he considered the application, but later frankly admitted that he had such knowledge. From his testimony it is obvious that Sutton, on the 21st day of May, was satisfactorily insurable under the company's rules for the plan and amount of insurance applied for. His testimony, however, was to the effect that he regarded Sutton as a substandard risk and, therefore, not insurable at the standard rate.

The reason given by Mr. Smelser for refusing to approve the application of Sutton was that "He had criticism of his drink habits to the extent that we would place him in a substandard classification." He did not testify as to any facts or reports giving rise to the foregoing statement on his part, but did outline in a general way things which were normally or generally considered by the company in connection with one's drinking habits in determining whether to approve an application. Precisely what criticism of Sutton's drinking habits reached Smelser or from whence it came does not appear in the record. It is clearly inferable from the testimony of Smelser that neither domestic difficulties nor any occupational exposure of Sutton, the reasons given

by McKelvey for denying liability, had anything whatever to do with Smelser's decision, as the underwriter.

Under the foregoing facts and circumstances, viewed in the light of the applicable principles of law hereinabove set forth, we think there was a jury issue as to whether the insurer dealt with the matter reasonably, fairly and honestly, or, to the contrary, dealt therewith arbitrarily, capriciously and unreasonably. It follows that the trial judge was in error in granting a judgment *non obstante veredicto*. The judgment is, accordingly, reversed and the cause remanded for entry of judgment in favor of appellants in accordance with the verdict of the jury.

Reversed and remanded.

Moss, C. J., LEWIS and LITTLEJOHN, JJ., and CLARENCE E. SINGLETARY, Acting Associate Justice, concur.