### 23294

William S. POSTON, individually, Ronald B. Poston, individually, William S. Poston, and Ronald B. Poston as Personal Representatives of the Estate of Margaret S. Poston, Thomas J. Poston and Kay P. Harmon, Respondents v. NATIONAL FIDELITY LIFE INSURANCE COMPANY, Appellant.

(399 S.E. (2d) 770)

Supreme Court

*David W. Robinson, II, James M. Brailsford, III,* and *D. Clay Robinson,* of *Robinson, McFadden & Moore, P.A.,* Columbia, and *Gordon B. Baker, Jr.,* of *Willcox, Hardee, McLeod, Buyck, Baker & Williams,* Florence, *for appellant.*

*Ken Suggs* and *John Boswell,* of *Suggs & Kelly Lawyers, P.A.,* Columbia, and *Thomas E. Smith, Jr.,* Pamplico, *for respondents.*

Heard Feb. 21, 1990.

Decided Nov. 26, 1990.

CHANDLER, Justice:

National Fidelity Life Insurance Company (Fidelity) appeals a jury verdict of $400,000 actual and $200,000 punitive damages in favor of Respondents (The Postons/Beneficiaries) for breach of contract and bad faith refusal to pay a life insurance policy.

We affirm the award of actual damages, and reverse the award of punitive damages.

## FACTS

A detailed review of the facts is necessary to an understanding of the issues.

David A. Lowe (Lowe), an insurance agent, proposed to sell B. Stafford Poston (Poston), age 65, a $500,00 life insurance policy with Fidelity.[1] Lowe sought to obtain a "super-preferred" rate[2] for Poston, in the hopes of writing a second $500,000 policy on Poston's wife.

After the application and requisite medical exam were completed on July 8, 1985, Poston's wife gave Lowe a $600 check in payment of the first month's premium. Lowe *then* handed, either to Poston or his wife, a "Conditional Receipt," the back of which contains three conditions precedent to coverage:

    (1) a premium deposit equal to at least one month's premium,

---

[1] The purpose of this policy was to replace an existing $500,000 policy with Great Southern National Life Insurance Company, which Lowe had previously sold to Poston.

[2] Fidelity offers three rates: super-preferred, preferred, and standard. One month's premium at a super-preferred rate was $495.00.

(2) a completed medical examination, and

(3) a determination by the Insurer that the applicant was insurable at standard rates as of the Application Date.

The receipt next states:

then, but only after such conditions are met, insurance under the terms and conditions of *the policy applied for will become effective as of the Application Date regardless of death or change of insurability* of any person on whom insurance is requested and which occurs after such Application Date. *However, the Company shall not be required to make insurance effective for an amount which together with any amount in effect on the Proposed Insured in the Company would exceed the following limits: (a) $100,000 of life insurance,* and (b) $50,000 of accidental death benefits. (Emphasis supplied.)

Lowe did not read these provisions to Poston, nor did he call them to his attention.

The application was then sent to Insurer for processing; however, prior to a determination of insurability, Poston was killed in an automobile accident on July 13, 1985.

Thereafter, the Postons/Beneficiaries filed a claim with Fidelity, through Lowe, who "hoped" that the company would pay the full $500,000.

On August 1, 1985, an interdepartmental memo from Mary Livingston, manager of Fidelity's claims department, advised that "The attached case is for $500,000. . . . The policy has not been issued. The applicant was killed in a car accident. We are getting records to see if policy would have been issued. If so, claim will be paid." At the bottom of the memo is a comment "Possible—payment according to conditional receipt—if so no reinsurance."

Subsequently, Poston's medical records revealed a June, 1984 liver enzyme test which was somewhat elevated, "although not significantly" (Tr. p. 66).[3] Due to this test result, Fidelity concluded that further testing would have been required to determine insurability. Unable to gather such evidence, Insurer resolved the doubt in Poston's favor and found

---

[3] A second liver enzyme test performed the same day was normal. (Tr. p. 76).

him to be insurable. Thereafter, Fidelity paid the beneficiaries $100,000 under the conditional receipt provision, deducting the $600 premium.[4]

The Beneficiaries instituted suit alleging (1) breach of contract for failure to pay the full $500,000, and (2) bad faith refusal to pay. The jury returned a verdict in their favor for $400,000 actual and $200,000 punitive damages.

## ISSUES

Although several issues are raised, we need address only

(1) whether Poston was limited by the conditional receipt to $100,000 coverage, and
(2) whether there is evidence of bad faith to suppport an award of punitive damages.

## DISCUSSION

### I. *Conditional Receipt*

This Court has addressed the validity of conditional receipts. In *Vernon v. Provident Life & Accident Insurance Company*, 266 S.C. 208, 222 S.E. (2d) 501 (1976), Justice Littlejohn, writing for the majority, stated:

> In the life insurance business, there are in use various forms of binding receipts which at least conditionally afford an applicant interim coverage between the date of the application and the actual issuance and delivery of the policy. Such binding receipts have been the source of a great deal of litigation. In determining whether interim coverage is afforded by a particular receipt, the specific language of the receipt must be taken into account. Liability of the insurer, if any, is dependent upon the *language of the receipt*, the *facts of the particular case* and the *intention of the parties*. (Emphasis supplied.)

266 S.C. at 213-214, 222 S.E. (2d) at 503.

As with contracts generally, the cardinal principle in construing insurance contracts is that the *intention of the parties* controls. *See, generally*, 43 Am. Jur. (2d) *Insurance* § 272.

---

[4] Poston's original $600 check was returned, uncashed, to his wife.

We have previously recognized that restrictions or limitations of which an insured has no notice are not binding, see, *Hyder v. Metropolitan Life Insurance Company*, 183 S.C. 98, 190 S.E. 239 (1936), a holding which derives from lack of intent on the part of an insured to have his remedies contractually limited.

Laypersons who pay their premium at the time an application for insurance is filed are justified in assuming that payment will bring immediate protection. *Smith v. Westland Life Ins. Co.*, 15 Cal. (3d) 111, 123 Cal. Rptr. 649, 539 P. (2d) 433 (1975). "[I]f nothing is said about the complicated and legalistic phrasing of the receipt, and the agent accepts the application and first month's premium, the applicant has reason to believe he is insured." *Toevs v. Western Farm Bureau Life Ins. Co.*, 94 Idaho 151, 483 P. (2d) 682, 685 (1971). "An insurer who wishes to avoid liability must not only use clear and unequivocal language evidencing its intent to limit temporary coverage, but it must also call such limiting conditions to the attention of the applicant." *Sanchez v. Connecticut General Life Ins. Co.*, 681 P. (2d) 974 (Colo. App. 1984). *See also, State Farm v. Khoe*, 884 F. (2d) 401 (9th Cir. 1989); *Cain v. Aetna*, 135 Ariz. 189, 659 P. (2d) 1334 (Ariz. App. 1983); *Puritan Life Ins. v. Guess*, 598 P. (2d) 900 (Alaska 1979); *Collister v. Nationwide Life Ins.*, 479 Pa. 579, 388 A. (2d) 1346 (1978).

It must be emphasized that Poston did not approach Lowe to procure a $500,000 policy; indeed, he had an existing $500,000 policy with Great Southern National Life Insurance. To the contrary, it was Lowe who sought out Poston for the purpose of selling *two* policies, one to Poston and another to his wife. After gaining Poston's consent to purchase the policy, however, Lowe failed to call to his attention the terms of the Conditional Receipt which attempted to limit Fidelity's liability to $100,000. Lowe testified that he did not advise Poston to read the receipt, nor did he even know whether he gave the receipt to Poston or to his wife. On the other hand, Poston's son testified, directly, that Lowe gave the receipt to Mrs. Poston. There is no evidence in the record that Poston had notice of the $100,000 limitation. Under these circumstances, he was not bound by it.

Moreover, Poston is entitled to the full $500,000 coverage as the terms of the receipt are ambiguous.

"Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." *Edens v. S.C. Farm Bureau Mutual Insurance,* 279 S.C. 377, 379, 308 S.E. (2d) 670, 671 (1983), appeal after remand, 288 S.C. 435, 343 S.E. (2d) 49 (Ct. App. 1986).

Here, the receipt states that if the three conditions are met, "the *policy applied for* ($500,000) will become effective as of the Application Date regardless of death or change of insurability . . ." (Emphasis supplied.) Only in the following sentence does Insurer attempt to limit its liability to $100,000, rather than the amount of the policy applied for. This contradiction clearly creates an ambiguity which must, under *Edens,* be resolved in Poston's favor.

This ambiguity is further demonstrated by actions of Fidelity's own agent, Lowe, and its claims manager, Mary Livingston.

Lowe testified that he helped the beneficiaries file the claim forms and "certainly hoped" the company would pay the $500,000. Indeed, he later inquired of Fidelity "why they were only paying $100,000," clearly indicating his own belief that Fidelity was liable in the full amount.

Similarly, Livingston dispatched a memo which anticipates payment of the $500,000 claim in the event Poston were found to be insurable.

These interpretations given the receipt by Fidelity's own agent and employee render it susceptible of more than one construction. Resolving this ambiguity in Poston's favor, as we must, Fidelity is liable for the full $500,000.

The verdict for $400,000 actual damages is affirmed.

## II. BAD FAITH/PUNITIVE DAMAGES

This Court established in *Nichols v. State Farm Mutual Auto Ins. Co.,* 279 S.C. 336, 306 S.E. (2d) 616 (1983), that punitive damages are recoverable in an action for bad faith refusal to pay benefits where the insurer's actions are willful or in reckless disregard of the insured's rights.

Here, the receipt is ambiguous and susceptible of more than one construction. Insurer's interpretation that the receipt limits its liability to $100,000 does not rise to the level of bad faith.

The Beneficiaries contend that Fidelity's conduct in reviewing Poston's medical records constitutes bad faith. We disagree. It is reasonable that a prudent insurer would thoroughly examine an application by a 65-year-old person prior to issuing a $500,000 policy.

## CONCLUSION

The verdict for $400,000 actual damages is affirmed; the verdict for punitive damages is reversed.

Affirmed in part; reversed in part.

GREGORY, C.J., and HARWELL, FINNEY and TOAL, JJ., concur.

