24378

Harold O'Neal RICKBORN, Personal Representative of the Estate of Rod-
ney Rickborn, Respondent v. The LIBERTY LIFE INSURANCE
COMPANY, Appellant.

(468 S.E. (2d) 292)

Supreme Court

*Clarke W. Dubose,* of *Sinkler & Boyd, P.A.,* Columbia; and *R. David Black,* Greenville, *for Appellant.*

*George K. Kefalos,* of *Claypoole, Kefalos, Waggoner & Barrow,* North Charleston; and *Andrew K. Epting, Jr.* and *W. Andrew Gowder, Jr.,* both of *Wise & Cole, P.A.,* Charleston, *for Respondent.*

Heard Nov. 2, 1995.

Decided Mar. 4, 1996; Reh. Den. Apr. 15, 1996.

BURNETT, Justice:

In this life insurance coverage case, Appellant (Liberty Life) appeals from the special referee's final order dated December 22, 1994, which granted Respondent judgment in the face amount of the policy totaling $100,000 plus interest from May 1, 1985, until the date of the order. In addition, Liberty Life appeals the amended final order dated February 8, 1995, which basically affirmed the special referee's previous rulings, but revised the judgment to include an accidental death benefit in the amount of $75,000, and provided for recaculation of prejudgment interest with the principal amount being $175,000. The two appeals were consolidated. We affirm.

## FACTS

Respondent Harold O'Neal Rickborn brought this action for life insurance benefits after his son, Rodney Rickborn (Rodney), was seriously injured in an automobile accident on March 23, 1985, and died from those injuries on May 1, 1985. Rodney lived with his father after his parents were divorced. Rodney's mother, Patricia Glasser, remarried Robert Glasser (Glasser), a sales agent for Liberty Life.

During a family gathering in February 1985, nineteen-year-old Rodney asked Glasser for advice on insurance and savings. Glasser recommended that Rodney apply for a universal life insurance policy which would provide insurance as well as savings. The following week after a nighttime high school basketball game, Glasser presented Rodney an application and conditional receipt and informed him that the policy would

provide the coverage as discussed. However, Glasser did not review the application or conditions with Rodney, but merely told him to sign the documents. Without reading them, Rodney signed the documents on the hood of a car in the parking lot at the high school. Rodney did not receive a copy of either document. Because Rodney did not have his checkbook with him to pay the initial premium, Glasser said he would "take care of it," and Rodney could give a check to his mother. Glasser's statement that he would "take care of it" indicated to Rodney that the initial premium would be paid ensuring him immediate coverage. Rodney's mother testified that Glasser told Rodney he was covered. On March 1, 1985, Glasser wrote a personal check in the amount of $50.00 to Liberty Life for Rodney.

Glasser submitted an incomplete application to Liberty Life which was not accepted. Moreover, because Glasser did not have an insurable interest in Rodney, according to Liberty Life's guidelines, his check would not bind coverage. Consequently, the application was returned to Glasser, and Liberty Life instructed him to complete and resubmit it. Glasser never informed Rodney that he was not covered as represented, nor did he resubmit the application prior to Rodney's automobile accident on March 23, 1985. Liberty Life failed to further supervise Glasser regarding Rodney's application.

The application signed by Rodney required information concerning his prior driving record, which was incomplete. Rodney's four-year driving record included five (5) accidents, nine (9) moving violations, and two (2) suspensions. Liberty Life argued to the special referee that even had the application been properly completed and submitted, under its guidelines Rodney was uninsurable.

## ISSUES

I. Did the Special referee err in concluding that Liberty Life clothed Glasser with apparent authority making it liable in negligence for his acts?

II. Did the special referee err in finding the elements of contract between Rodney and Liberty Life?

III. Did the special referee err in assessing the award of prejudgment interest?

## STANDARD OF REVIEW

In an action at law, tried without a jury, the judge's findings will not be disturbed unless they are without evidentiary support. *Townes Associates Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E. (2d) 773 (1976). A judge's findings are equivalent to those of a jury in an action at law. *Id.*

## DISCUSSION

### I. *Liberty Life's Liability in Negligence for Glasser's Acts*

#### A. *Glasser's Authority as Liberty Life's Agent*

Liberty Life does not dispute that it employed Glasser as a sales agent or that he mishandled Rodney's application for insurance. However, Liberty Life contends that under S.C. Code Ann. § 38-43-10 (1989), Glasser was not an agent for all purposes, and in light of the following language in the documents signed by Rodney, the extent of Glasser's authority was restricted to taking applications and collecting premiums:

> Any policy issued as a result of this application shall together with this application constitute a single and entire contract of insurance. Only the President, a Vice President, the Secretary, or an Assistant Secretary of the Company may make a contract on its behalf. No waiver or modification of a contract provision or of any of the Company's rights or requirements shall be binding upon the Company unless it is in writing signed by one of such officers. Neither the agent whose signature appears below, not any other agent or broker, nor any medical examiner is authorized to accept risks, pass on insurability, make or modify contracts, or waive any of the company's rights or requirements.

Liberty Life also asserts the conditional receipt portion of the application provides that agents are not authorized to waive the requirement that the applicant must be an acceptable risk to Liberty Life under its standards for the proposed plan of insurance or the requirement that the applicant must pay in full the first premium. Consequently, Liberty Life maintains that by signing the application and conditional receipt, Rodney knew Glasser did not have the authority to complete the application without Rodney's input, to pay pre-

miums on behalf of Rodney, to make underwriting decisions, to waive application requirements, or to bind the company to coverage. We disagree.

The special referee determined that Glasser was an agent of Liberty Life according to § 38-43-10, and as such he had the duty to meet the following standards generally accepted in the industry: to properly complete applications for insurance; to properly explain the terms and limitations of coverage; and to assure that the initial premium is properly tendered and handled. He further concluded that Liberty Life clothed Glasser with apparent authority and, therefore, Liberty Life was bound by Glasser's representations to Rodney that his insurance coverage commenced the night he signed the application. The special referee, relying upon *Cauthen v. Metropolitan Life Ins. Co.*,[1] held that the limiting provisions in the application and conditional receipt were waived because Glasser failed to bring them to Rodney's attention.

The doctrine of apparent authority focuses on the principal's manifestation to a third party that the agent has certain authority. Accordingly, the principal is bound by the acts of its agent when it places the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe that the agent has certain authority and they in turn deal with the agent based upon that assumption. *Fernander v. Thigpen*, 278 S.C. 140, 293 S.E. (2d) 424 (1982); *Vereen v. Liberty Life Ins. Co.*, 306 S.C. 423, 412 S.E. (2d) 425 (Ct. App. 1991). Moreover, a general agent's authority is determined by the nature of the business, and is coextensive with his scope of employment, as he has the right to do not only what is customary in obtaining business, but whatever is reasonably incidental thereto. *Noisette v. Ismail*, 299 S.C. 243, 384 S.E. (2d) 310 (Ct. App. 1989), *rev'd on other grounds*, 304 S.E. 56, 403 S.E. (2d) 122 (1991). Those dealing with such an agent, *without notice of restrictions upon his authority*, have a right to presume that his authority is coextensive with its apparent scope, and as broad as his title indicates. *Id.*

---

[1] 189 S.C. 356, 1 S.E. (2d) 147 (1939) (holding that the insurer is not bound by acts of the agent which are beyond the scope of his authority when the insured has notice of the limitations upon an agent's authority or when the circumstances are sufficient to suggest that an inquiry should be made as to such limitations).

One seeking insurance from a general agent is not bound to inquire as to the precise instructions he has received from his company. The restrictions and limitations existing upon the authority of a general agent as between such agent and the company are not binding upon policyholders in their dealings with such agent, in the absence of knowledge of [sic] their part of such limitations. Thus, a limitation upon the authority of a general agent, having power to make contracts of insurance, would not relieve the insurer from liability on a policy issued by such agent, though in violation of the limitation, where the insured had neither actual nor constructive notice of such limitation. . . .

*Noisette v. Ismail*, 299 S.C. at 250, 384 S.E. (2d) at 314, (citing J. Appleman and J. Appleman, *Insurance Law and Practice* § 8693 at 259-61 (1981)).

By employing Glasser as a sales agent, Liberty Life placed him in a position whereby he had the express authority to solicit purchasers for its insurance products, to write applications, and to transmit premium payments. The scope of Glasser's employment included the inherent authority as well at the duty to clearly explain the terms and limitations of Liberty Life's products. The record establishes that Glasser advised Rodney to obtain a universal life insurance policy, presented him with the application and conditional receipt for such policy in a parking lot at night, and told him to sign the documents without explaining either the limitations of his authority or the requirements for coverage. Arguably, had Glasser properly explained the limitations to Rodney, they would be binding. Instead, the transaction was concluded so quickly that Rodney never read nor did he receive copies of the documents he signed. Hence, due to Glasser's careless conduct while acting as an agent for Liberty Life, Rodney had neither actual nor constructive notice of the limiting provisions in the documents. *See Poston v. National Fidelity Life Ins. Co.*, 303 S.C. 182, 399 S.E. (2d) 770 (1990) (applicant must have notice of limitations to be bound); *Hyder v. Metropolitan Life Ins. Co.*, 183 S.C. 98, 190 S.E. 239 (1937) (restrictions or limitations of which an insured has no notice are not binding). Therefore, we find that the special referee correctly determined the limiting provisions to be waived.

Liberty Life next argues that the special referee erred in deciding that Glasser had the authority to complete Rodney's application and process the initial premium. Not only did Liberty Life concede that it trains its agents to gain the trust and confidence of its applicants which entitles them to rely upon the agent's representations, but it also placed Glasser in a position whereby applicants such as Rodney trusted and relied upon his representations. Clearly, because Rodney had no notice of any restrictions upon Glasser's authority, the assurance that he would "take care of" the application and premium caused Rodney to reasonably assume that Glasser had the authority to prepare the application and handle the premium. Further, we conclude that the circumstances in this case—Rodney's age, inexperience, and faith in his stepfather's advice—clearly do not suggest, let alone *demand* as Liberty Life submits, that Rodney should have ascertained the scope of Glasser's authority.

Next, Liberty Life contends that the arrangement whereby Glasser would complete the application and pay the initial premium was outside the scope of his employment, thus creating a dual agency. Hence, Glasser was acting for the benefit of himself and his stepson rather than for the furtherance of Liberty Life's business. As a result, Liberty Life maintains that Glasser knew he was acting beyond the scope of his employment and, therefore, this knowledge was imputable to Rodney. We disagree.

Arguably, because Glasser could show increased production for that week, he would benefit by submitting Rodney's application. Nevertheless, Liberty Life has failed to show that by mishandling the application, Glasser was attempting to retain any benefit, advantage, or profit for himself rather than for Liberty Life. First, Glasser sold a product which would benefit Liberty Life. Second, because agents are permitted to sell to family members, the soliciting of Rodney as a life insurance purchaser clearly fell within the scope of Glasser's employment and benefited Liberty Life. Third, by being the stepfather of the applicant, Glasser either knew the information about Rodney necessary to complete the application, or he could have obtained it from Rodney's mother. Moreover, because Liberty Life trains and requires its agents to complete applications, Glasser's offer to complete it was not an act ad-

verse to Liberty Life's interests. Lastly, Glasser's offer to temporarily pay the initial premium was an attempt to expedite the application process thereby increasing Glasser's weekly production which would also benefit Liberty Life. Accordingly, Liberty Life has failed to establish dual agency, and any knowledge Glosser had that he was acting outside his scope of authority was not imputed to Rodney.

### B. *Liberty Life's Liability for Negligence*

Liberty life maintains the special referee erred in holding it liable for negligence and argues that Glasser's assurance that he would "take care of it" was not an actionable representation promising coverage to Rodney. Furthermore, Liberty Life argues that Rodney had no right to rely on the statement because he had a duty to read and understand the provisions of the documents.

To establish a cause of action in negligence the following three essential elements must be proven: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty. *Brown v. South Carolina Ins. Co.*, 284 S.C. 47, 324 S.E. (2d) 641 (Ct. App. 1984), *cert. dismissed*, 290 S.C. 154, 348 S.E. (2d) 530 (1985). The obligation to advise created by an agent acting within the scope of his actual or apparent authority becomes the obligations of the insurer. *Carolina Bank and Trust Co. v. St. Paul Fire and Marine Co.*, 279 S.C. 576, 310 S.E. (2d) 163 (Ct. App. 1983). Generally, the principal is held liable to third persons in civil suits for the following:

> frauds, deceits, concealments, misrepresentations, negligences, and other malfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize of justify or participate in, or indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases, the rule applies *respondeat superior*; and it is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be

trusted, and thereby, in effect, he warrant his fidelity and good conduct in all matters within the scope of the agency.

*Huestess v. South Atlantic Life Ins. Co.*, 88 S.C. 31, 70 S.E. 403, 407 (1911). *See also McPherson v. United Am. Ins. Co.*, 242 S.C. 28, 129 S.E. (2d) 842 (1963); *West v. Service Life and Health Ins. Co.*, 220 S.C. 198, 66 S.E. (2d) 816 (1951).

The record establishes that Glasser discussed Rodney's insurance requirements with him and *advised* him to obtain a universal life insurance policy. Moreover, Glasser conceded that he intended his representations to be an assurance to Rodney that he would procure insurance for him. Therefor, because Rodney trusted Glasser, it was reasonable for him to assume the truth of his representations and to believe that insurance would be obtained. Moreover, here was nothing about the application process that would have led Rodney to believe Glasser could not carry through with his promises. He was giver no notice that Glasser's authority was limited, nor was he advised by Glasser or Liberty Life that the application was incomplete and unacceptable. Accordingly, we find no error in the special referee's determination that Glasser, while acting on behalf of Liberty Life, breached a duty of care owed Rodney and that such breach proximately caused harm to Rodney's estate.

Further, the elements required to prove a separate cause of action for negligent misrepresentation as established in *Kelly v. South Carolina Farm Bureau Mut. Ins. Co.*[2] have been proven: (1) Glasser made false representations to Rodney; (2) Glasser had a pecuniary interest in so doing; (3) Glasser owed a duty of care to see that he communicated truthful information to Rodney; (4) Glasser breached that duty; (5) Rodney relied to his detriment on the representations; and (6) Rodney's estate suffered a pecuniary loss of $175,000 as the proximate result of his reliance upon

---

[2] 316 S.C. 319, 450 S.E. (2d) 59 (Ct. App. 1994) (to state a claim for negligent misrepresentation the plaintiff must allege that: the defendant made a false representation; the defendant had a pecuniary interest in making the statement; the defendant owed a duty of care to communicate truthful information; the defendant breached that duty; the plaintiff justifiably relied on the representation; and the plaintiff suffered a loss as the proximate result of his reliance upon the representation).

the representations. Therefore, Liberty Life's argument that the special referee erred in finding negligent misrepresentation has no merit.

Nonetheless, Liberty Life argues that its acts did not cause Rodney's loss because his poor driving record made him ineligible for coverage under its guidelines. Although it may be speculative whether Rodney could have obtained insurance with Liberty Life or elsewhere, the record establishes that the denial of an application because of a driving record is discretionary under Liberty Life's guidelines. Consequently, had Rodney been notified that the application was incomplete and unaccepted, he could have resubmitted a completed application with a personal check, and his application might have been accepted by Liberty Life. Liberty Life cannot use its own neglect of a duty as a shield from liability. *See American Sec. Ins. Co. v. Howard*, 315 S.C. 47, 431 S.E. (2d) 604 (Ct. App. 1993); *Champion v. Whaley*, 280 S.C. 116, 311 S.E. (2d) 404 (Ct. App. 1984). Moreover, Rodney may have been able to obtain insurance with another company. Instead, he reasonably relied to his detriment on Glasser's assurances that insurance was procured. We therefore find that the facts specific to this case establish that Glasser's negligence prevented Rodney from obtaining a life insurance policy prior to his death, thus resulting in harm to Rodney's estate in the amount of $175,000 in death benefits.

Next, Liberty Life asserts that the special referee erred in holding it liable for negligently supervising Glasser after concluding that he was not properly trained, he was a "sub-par" agent, and he failed to submit a completed application.

An employer owes a duty of care to a third party when the possible harm resulting to the third party by the employee could have been reasonably anticipated by the employer. *See Comer v. Tandy Corp.*, 295 S.C. 133, 367 S.E. (2d) 436 (Ct. App. 1988). In addition, any duty the principal owes a third party arising from a contract between them is limited to an obligation on the part of the principal to use due care in supervising the actions of the agent which are undertaken in his capacity as an agent for the principal and not in this individual capacity. *Degenhart v. Knights of Columbus*, 309 S.C. 114, 420 S.E. (2d) 495 (1992).

Liberty Life had notice that Glasser negligently submitted an incomplete application for Rodney and attempted to tender his own check for the initial premium payment. Nevertheless, when a Liberty Life manager instructed Glasser to get Rodney's application completed and resubmitted, he failed to verify that it was done. In addition, Liberty Life never notified Rodney that his application was not accepted. Glasser also mishandled the preparation of other applications and was considered by Liberty Life to be a below average sales agent. Under these facts, we hold that Liberty Life was alerted to the fact that Glasser's carelessness could cause harm and, therefore, it breached a duty of care owed to Rodney by failing to properly supervise him. *Comer v. Tandy Corp., supra; Degenhart v. Knights of Columbus, supra.*

II. *Liberty Life's Liability under Contract*

Liberty Life contends the special referee erred in holding it liable under contract because the application was a mere proposal and not an offer of coverage, and there was no meeting of minds concerning consideration and amount of coverage. We disagree.

An application for insurance is an offer and until accepted by the insurer, no contractual relationship exists. *Moore v. Palmetto State Life Inc. Co.*, 222 S.C. 492, 73 S.E. (2d) 688 (1952). Circumstances such as the negligent delay in either acting upon an application for insurance or in notifying the applicant of the rejection of an application will sustain liability on the theory of an implied acceptance of the applicant's offer. *See Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 415 S.E. (2d) 393 (1992); *Moore v. Palmetto State Life Ins. Co., supra.* Moreover, when construing insurance contracts, the intention of the parties is controlling. *Poston v. National Fidelity Life Ins. Co., supra.* A meeting of minds is based upon the intent and purposes as shown by all the circumstances. *Player v. Chandler*, 299 S.C. 101, 382 S.E. (2d) 891 (1989). A contract may be based on a verbal understanding to which both parties have mutually assented and upon which both are acting. *Gaskins v. Blue Cross-Blue Shield of South Carolina*, 271 S.C. 101, 245 S.E. (2d) 598 (1978).

Rodney made an offer to purchase life insurance from Liberty Life by signing the application as Glasser instructed. Glasser, while acting in his capacity as an

agent for Liberty Life, accepted the offer by representing to Rodney that he would procure coverage for him. Clearly, they intended to enter into a contractual relationship. Because Rodney was never notified by Glasser or Liberty Life that his application was not accepted, acceptance of the application was implied and a contractual relationship existed.

Furthermore, Rodney and Glasser agreed that Glasser would procure a universal life insurance policy for Rodney in the amount of $100,000 with an additional accidental death benefit of $75,000 and a savings plan. For this coverage, Rodney promised to reimburse Glasser for the initial premium and to continue to pay future premiums to Liberty Life. Clearly, there was a meeting of minds, and the exchange of promises qualified as consideration. *Evatt v. Campbell*, 234 S.C. 1, 106 S.E. (2d) 447 (1959) (mutual promises constitute good consideration).

Relying upon out holding in *Poston*, Liberty Life next contends that Rodney's failure to personally pay the initial premium resulted in a failure of consideration. In *Poston*, we held that if the applicant pays his premium at the time the application for insurance is filed and the agent accepts the application and the first month's premium, the applicant is justified in assuming that he has immediate protection. Consequently, as a general rule, the applicant rather than the agent must pay the premium to guarantee coverage. However, the facts and circumstances in this case differ from those in *Poston* in that Glasser explicitly represented to Rodney that he had the authority to tender payment for him. Limited to this unusual situation, we find that Rodney was entitled to rely upon Glasser's promises and, therefore, the standard condition which would require Rodney to pay the initial premium was waived through Glasser's conduct. This conclusion is fact specific to this situation and in no way alters our decision in *Poston* whereby *applicants* must pay the initial premium when filing the application to guarantee immediate coverage.

Next, Liberty Life argues the special referee erred in determining that Rodney's detrimental reliance on Glasser's representations constituted consideration. Valuable consideration for a contract may consist of some forbearance given or detriment suffered. *Sanchez v. Tilley*, 285 S.C. 449, 330 S.E. (2d) 319 (Ct. App. 1985). Accordingly, con-

sideration can be found in Rodney's detrimental reliance upon Glasser's assurances that he was procuring insurance coverage for him.

Lastly, Liberty Life asserts it was error for the special referee to rely upon *Poston* for the proposition that the conditional receipt terms were not binding on Rodney because they were not brought to his attention. In *Poston*, the applicant completed the application and submitted the initial premium; however, the limitations of coverage were not called to the applicant's attention, and he died prior to the issuance of the policy. We held that the applicant was not bound by the limitations because he did not have notice of them. Accordingly, in the present case, the special referee accurately concluded that because Rodney had no notice of the limitations, he was not bound by them.

### III. *Prejudgment Interest*

Liberty Life contends the special referee erred in awarding prejudgment interest from the date of Rodney's death, asserting that interest should either not be allowed or it should be restricted to the date the complaint was filed.

The record contains no postjudgment motion challenging this issue pursuant to Rule 59(e), SCRCP. Therefore, this issue has not been preserved for our review. *Pelican Bldg. Centers v. Dutton*, 311 S.C. 56, 427 S.E. (2d) 673 (1993).

### CONCLUSION

We find that the evidence supports the special referee's conclusion that Glasser was Liberty Life's agent, that he was clothed with apparent authority, and that his negligence was imputable to Liberty Life. In addition, the evidence supports the special referee's decision that Liberty Life was liable under contract. Accordingly, the judgment below is

Affirmed.

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.