493 S.E.2d 356

**Leroy BURNS and Leroy Moss, Appellants,**

v.

**Charles GARDNER, Earline Gardner, Black Blind Professional Alliance, and Owens Corning, Inc., Respondents.**

**No. 2744.**

Court of Appeals of South Carolina.

Submitted Oct. 8, 1997.

Decided Nov. 3, 1997.

---

Joseph L. Smalls, Jr., and Herbert E. Buhl, III, Columbia, for appellants.

James C. Anders, Columbia, for respondents Charles Gardner, Earline Gardner, and Black Blind Professional Alliance.

Clarke W. McCants, III, of Braithwaite, McCants & Smith, Aiken, for respondent Owens Coming, Inc.

HOWELL, Chief Judge:

Appellants Leroy Burns and Leroy Moss appeal from the trial court's dismissal of their complaint and the assessment of sanctions against their attorney. We affirm in part and dismiss in part.

## I.

On or about April 24, 1995, black members of the South Carolina General Assembly received a facsimile transmission of a position paper from a group calling itself the Black Blind Professional Alliance (BBPA). The paper was highly critical of the South Carolina Commission for the Blind and its director, Mr. Gist. The appellants, who both are blind African–Americans, obtained a copy of the position paper. Notwithstanding the fact that the position paper made no reference to them, either by name or implication, the appellants filed suit against Charles and Earline Gardner, who they believed were the authors of the position paper, as well as Owens Corning, Inc., Charles Gardner's employer.

In their original complaint, the appellants alleged, *inter alia*, that the Gardners, through the BBPA, "made disparaging remarks causing retribution to the Black Blind population of South Carolina," and "did state facts about the Commission for the Blind that are untrue." The appellants asserted a claim of intentional infliction of emotional distress, contending that the Gardners' "actions and statements were intended to cause injury to the Black Blind persons of the State of South Carolina, in particular, to the [appellants], and to the Commission for the Blind." In their claim against Owens Corning, the appellants alleged that Charles Gardner faxed the position paper while at work, using Owens Corning's equipment. The appellants contended that Owens Corning was negligent in

hiring Charles Gardner and "in the supervision of Charles Gardner in that it is foreseeable that an employee could use the company's fax machine to perform improper acts without specific written guidelines or company rules to regulate an employee's activities." The appellants sought the removal of Earline Gardner from her position with the Commission for the Blind as well as actual and punitive damages against Owens Corning.

The Gardners moved to dismiss the appellants' complaint, arguing that the appellants lacked standing to pursue the claims asserted in the complaint and that the complaint failed to state any claims for which relief could be granted. The Gardners contended that the appellants individually suffered no damages as a result of the position paper and that they lacked standing to assert claims on behalf of blind African–American South Carolinians in general. In response, the appellants argued they had standing because, as blind African–Americans, they were offended and defamed by the statements published in the position paper. They argued alternatively that they should be granted an opportunity to amend their complaint before it was dismissed.

The trial court allowed the appellants an opportunity to amend their complaint. The court, however, was extremely concerned about the viability of the claims the appellants were attempting to assert, particularly questioning whether the appellants suffered any individualized damages. The court warned the appellants sanctions might be appropriate if the amended complaint failed to establish that they suffered any damages.

The appellants filed an amended complaint asserting only a claim for injunctive relief against the Gardners and a claim for actual and punitive damages against Owens Corning. Unlike the original complaint, the amended complaint referred to and attached the position paper as an exhibit.

As to the Gardners, the amended complaint alleged that the Gardners "have made disparaging remarks regarding African–American persons of the blind population of the State of South Carolina, and in particular, to the [appellants]." The amended complaint further alleged that the Gardners' actions "were intended to cause injury to African–American members of the

blind population of South Carolina and more particularly these Plaintiffs."

As to Owens Corning, the amended complaint alleged that Charles Gardener used Owens Corning's equipment to fax the position paper and that Owens Corning ratified his actions. The amended complaint again alleged that Owens Corning was negligent in hiring Gardener and in failing to supervise his use of the fax machine.

The Gardners moved to dismiss the amended complaint and also sought sanctions against the appellants and their attorney.[1] The Gardners argued that because the appellants were not named in the position paper and the paper was not sent or directed to them, the appellants did not suffer any damages. The Gardners again argued that the appellants lacked standing to assert claims on behalf of the blind population of South Carolina.

At the hearing, appellants' counsel explained that their theory of the case was that the Gardners "have published a document that purports to represent all black individuals in South Carolina. That document, in these Plaintiffs' opinion, are [sic] very defamatory. It is plainly untrue. It almost borders on being fraudulent." Counsel further explained that "there's a place that they suggested they represented all black blind individuals in South Carolina. That's a misrepresentation also because they do not represent all black blind persons in South Carolina and the language in that document is quite clear. It's misrepresentation as well." In response to the trial court's question of what injury was suffered by the appellants, counsel for the appellants stated that "my clients have been harmed just by the publication of that document. . . . By those individuals receiving it believing that this documents speaks for them also. . . . It's reflected negative [sic] upon these two African–American blind individuals."

The trial court dismissed the amended complaint. The court concluded that because the appellants did not have a material interest or personal stake in the subject matter of the litigation, they lacked standing to maintain the action. The

___

1. While Owens Corning did not file its own motion to dismiss or a motion for sanctions, at the hearing it orally joined in the Gardners' motions.

court also concluded that, as to the claim against the Gardners, the amended complaint failed to state a claim, whether the claim was characterized as one for misrepresentation or defamation. As to the claim against Owens Corning, the trial court concluded that because the appellants failed to state a claim against Charles Gardner, Owens Corning's employee, no derivative liability could be imposed upon Gardner's employer. Finally, the trial court concluded that the appellants' counsel should be sanctioned under the Frivolous Proceedings Act, S.C.Code Ann. § 15–36–10, *et seq.* (Supp.1996). The court ordered counsel for the appellants to pay a total of $2,900 in attorneys' fees and costs incurred by the defendants.

## II.

On appeal, the appellants contend the trial court erred in dismissing the amended complaint. They argue they have standing to maintain the action because they have a personal interest "in not having Defendants continue to write and disseminate disparaging and defamatory remarks to members of the South Carolina Legislature about black blind professionals while posing as African American blind citizens of the State and purporting to speak on behalf of all blind professionals." The appellants also argue that the amended complaint sufficiently stated a claim of defamation. We disagree.

A decision on a Rule 12(b)(6) motion to dismiss must be based solely upon the allegations set forth on the face of the complaint. *See* Rule 12(b), SCRCP; *Stiles v. Onorato,* 318 S.C. 297, 457 S.E.2d 601 (1995); *State Bd. of Medical Examiners of South Carolina v. Fenwick Hall, Inc.,* 300 S.C. 274, 387 S.E.2d 458 (1990). A complaint may not be dismissed if the facts alleged in the complaint and the inferences reasonably drawn therefrom would entitle the plaintiff to any relief on any theory of the case. *Stiles,* 318 S.C. at 300, 457 S.E.2d at 602–03.

We have searched the amended complaint and the position paper [2] in vain looking for any facts that might entitle

2. Because the position paper was attached to and incorporated in the amended complaint, we may consider it when ruling on the defendants' motion to dismiss. *See* Rule 10(c), SCRCP ("A copy of any plat,

the appellants to any relief on their claims against the Gardners. To prevail in a defamation action, the plaintiff must establish that the defendant's statement referred to some ascertainable person and that the plaintiff was the person to whom the statement referred. *Neeley v. Winn–Dixie Greenville, Inc.*, 255 S.C. 301, 308, 178 S.E.2d 662, 665 (1971) (In a defamation action, the challenged statement must "be such that persons reading or hearing it will, in the light of surrounding circumstances, be able to understand that it refers to the person complaining, and it must have been so understood by at least one other person.") (quoting 50 Am.Jur.2d *Libel & Slander* § 143). In this case, the appellants are not mentioned, either by name or by implication, in the position paper. Certainly, the position paper makes derogatory statements about the director of the Commission for the Blind and other board members. However, contrary to the appellants' assertion, the position paper is in no way derogatory to the black blind population as a whole. *See, e.g., Hospital Care Corp. v. Commercial Cas. Ins. Co.*, 194 S.C. 370, 379, 9 S.E.2d 796, 800 (1940) ("The Court will not hunt for a forced and strained construction to put on ordinary words, but will construe them fairly, according to their natural and reasonable import, in the plain and popular sense in which the average reader naturally understands them. There is no presumption of defamation."). Moreover, even if the position paper were derogatory to the blind population in general, it would not vest in the appellants, who are unidentified individual members of the population, a right to bring a defamation claim. *Id.* at 377, 9 S.E.2d at 800 ("[W]here defamatory statements are made against an aggregate body of persons, an individual member not specifically imputed or designated cannot maintain an action."). Therefore, construing the allegations in the amended complaint in the light most favorable to the appellants and giving them the benefit of all reasonable inferences that can be drawn there-

photograph, diagram, document, or other paper which is an exhibit to a pleading is a part thereof for all purposes if a copy is attached to such pleading."); *Lee v. Kelley,* 298 S.C. 155, 158, 378 S.E.2d 616, 617 (Ct.App.1989) ("[B]y virtue of Rule 10(c), SCRCP, the attachment became a part and parcel of the complaint."); *cf. Metal Serv. Corp. v. Industrial Elec. Co.,* 253 S.C. 507, 171 S.E.2d 703 (1970) (considering materials attached to complaint when deciding defendant's demurrer to the complaint).

from, we conclude that the amended complaint fails to state a claim of defamation.

■ Likewise, the amended complaint cannot be construed as stating any claim for fraud or misrepresentation. First, we do not agree that the position paper purports to represent the views of all blind African–American professionals in this State. The position paper states only that it reflects the views of the Black Blind Professional Alliance; it does not claim that the membership in the BBPA, whether a fictitious group or not, includes all blind African–American professionals in South Carolina. Moreover, even if the paper could be construed as misrepresenting the size or composition of the group it purports to represent, the misrepresentation was made to members of the South Carolina General Assembly, not the appellants, and there is no allegation in the amended complaint that the appellants relied on the misrepresentation. Thus, the appellants can state no fraud or misrepresentation claim against the defendants. *See, e.g., Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 468 S.E.2d 292 (1996) (To prevail on a claim of negligent misrepresentation, plaintiff must establish, *inter alia,* that the defendant had a pecuniary interest in making the statement and that the plaintiff relied on the statement.); *First Union Mortgage Corp. v. Thomas,* 317 S.C. 63, 451 S.E.2d 907 (Ct.App.1994), *cert. denied* (June 28, 1995) (To prevail on a claim of fraudulent misrepresentation, the plaintiff must establish, *inter alia,* that he relied on and had a right to rely on the misrepresented facts.). Again viewing the allegations and the inferences drawn therefrom in the light most favorable to the appellants, we conclude that the amended complaint does not state a claim of misrepresentation against the Gardners.

■ The appellants likewise have failed to state a claim against Owens Corning. As we understand their complaint, they are attempting to impose vicarious liability on Owens Corning for the purported wrongs committed against them by Charles Gardner. Given our conclusion that the appellants have not stated a claim against Charles Gardner, their attempt to impose vicarious liability on Owens Corning also fails.[3]

---

3. The appellants do not argue that they have any independent claim against Owens Corning.

In essence, the appellants are seeking damages for the dissemination to third parties of nondefamatory information that neither names nor implicates the appellants individually. Plainly, no such cause of action exists. The trial court, therefore, properly dismissed the appellants' amended complaint.[4]

### III.

■ The appellants also challenge the trial court's assessment of sanctions against their attorney. We conclude, however, that the appellants may not raise this issue on appeal.

■ Only a person aggrieved by a ruling may appeal. *See* S.C.Code Ann. § 18–1–30 (1976) ("Any party aggrieved may appeal in the cases prescribed in this Title."); Rule 201(b), SCACR ("Only a party aggrieved by an order, judgment, or sentence may appeal."). A person is "aggrieved by the judgment or decree when it operates on his rights of property or bears directly upon his interest, the word aggrieved referring to a substantial grievance, a denial of some personal or property right or the imposition on a party of a burden or obligation." *Bivens v. Knight,* 254 S.C. 10, 13, 173 S.E.2d 150, 152 (1970); *accord Cisson v. McWhorter,* 255 S.C. 174, 177 S.E.2d 603 (1970). Clearly, the appellants' attorney was aggrieved by the sanctions order; however, the appeal of this issue has been brought by the appellants, not their attorney.

The assessment of sanctions in this case does not affect any property right of the appellants, nor does it impose any burden or obligation on the appellants. Thus, we cannot say that the appellants are aggrieved by the imposition of sanctions against their attorney. Because the appellants are not aggrieved by the assessment of sanctions, they cannot pursue the issue on appeal. *See Sherman Hosp. v. Wingren,* 169 Ill.App.3d 161, 119 Ill.Dec. 752, 755, 523 N.E.2d 220, 223 (1988) (Concluding that the imposition of sanctions against the defendants' attorney did not prejudice any right of the defendants; thus, "defendants cannot raise on appeal the entry of ... sanctions against their attorneys and, accordingly, are not

---

4. Given our disposition of this issue, we need not determine whether the appellants have standing to maintain their action.

618

entitled to question that ruling on appeal."); *accord* 4 C.J.S. *Appeal & Error* § 171 (1993) ("Where the attorney and not the client is aggrieved, the appeal must be taken by the attorney.... An attorney may appeal from sanctions imposed upon the attorney, and the client may not do so."). Accordingly, that portion of the appellants' appeal relating to the sanctions assessed against their attorney is hereby dismissed. *See Bivens*, 254 S.C. at 13, 173 S.E.2d at 152 ("The right of review is restricted to persons or parties aggrieved by the decision below. A party, therefore, cannot appeal from a decision which does not affect his interest, however erroneous and prejudicial it may be to the rights and interests of some other person.").

AFFIRMED IN PART AND DISMISSED IN PART.

HEARN and STILWELL, JJ., concur.